F. McLeod, Administrator of A. L. Dell, Appellant, vs. Philip Dell, Executor of B. M. Dell, Appellee.

1. The opinion of the Chancellor delivered in the Court below, forms no part of the record of the case, and cannot be read or referred to in the Supreme Court.

2. The rule which accords to the interpretation of words occurring in a *will*, greater indulgence than when used in a *deed*, must be taken with this qualification, that such indulgence is to be allowed only in aid of the intention of the testator : and where that intention is in *equipoise* between two contrary constructions, the words used, if they have received a well settled technical meaning, must be interpreted in that technical sense, otherwise they are to be taken according to their common acception.

3. The words " child" or " children," occurring in a will, usually denote *immediate* offspring, and in that sense are to be taken as words of *purchase ;* but employed as *nomen collectivum*, or synonymous with issue or descendants, they are to be taken as words of *limitation,* and are sufficient to create an estate tail. Where this latter construction has prevailed, however, it has generally been aided by the context.

4. The word " child" or " children" may be used as a term of *substitution,* that is, putting the immediate offspring in the place of the parent ; or it may be used as a term of *succession.* If employed in the former sense, it will not be taken to import " an indefinite failure of issue."

5. A recognition of the rule respecting " perpetuities," to wit : " a life or lives in being, and twenty one years after," is not in conflict with the 24th clause of our " declaration of rights."

6. To authorize the Chancellor to retain a bill, in order that he may give *general* relief, where the *special* relief sought has been denied, it is necessary that he shall have *acquired cognizance* or *gained jurisdiction* of the cause.

This case was decided at Jacksonville.

The following statement of the case was prepared by the Justice who delivered the opinion :

The bill in this cause is filed by the administrators of Amos L. Dell, deceased, against the executor of the last will and testament of Bennett M. Dell, deceased. Amos L. Dell was a son of the said testator, and one of the beneficiaries named in his will.

The bill sets forth that Bennett M. Dell did, on the 21st

day of February, A. D. 1855, make and publish his last will and testament in writing, which is herein inserted at full length, and is in the following words, viz:

In the Name of God, Amen. I, BENNETT MAXCEY DELL, of the County of Alachua, and State of Florida, being weak in body but of sound and disposing mind and memory, and calling to mind the frailty and uncertainty of human life, and being desirous of settling my wordly affairs, and directing how the Estates—with which it has pleased God to bless me—shall be disposed of after my decease, while I have strength and capacity so to do, do make and publish this my Last Will and Testament; hereby revoking and making null and void all other Last Wills and Testaments by me heretofore made. And first, I commend my immortal being to him who gave it, and my body to the earth, to be buried in the Family Burying Ground, in a decent and suitable manner, agreeable to my rank and estate in life. And as to my worldly estate and all the property, real, personal or mixed, of which I shall die seized and possessed, or to which I shall be entitled at the time of my death, I devise, bequeath and dispose thereof in the manner following, to-wit:

1. *Imprimis.* My will is, that all my just debts and funeral charges shall, by my Executors hereinafter nominated, be paid out of my Estate, as soon after my decease as shall be by them found convenient.

2. *Item.* To my present much-beloved wife, Eliza Dorothy, I give, devise and bequeath the following Negro Slaves, that is to say, Jack, Juliana, and her four children, Lewis Henry, Francis, Billy and Grace; Somerset Betsy and her two children, Jim and Sappho; Adam and Peggy, and her child Mitchell, with their increase, to have, to hold and enjoy during her natural life, should she not marry after my decease; but if she does marry after my decease, it is my will

that the above-mentioned negro slaves shall, immediately upon such marriage, revert to and be equally divided among my children or their children, subject to certain restrictions and conditions hereinafter set forth and mentioned. And it is further my will that my wife, the said Eliza Dorothy, from the time of the marriage referred to above, shall receive annually the sum of five hundred dollars, to be paid to her by my Executors, hereinafter nominated, out of such portion of my Estate as shall seem most proper to them, during her natural life; but if my wife, the said Eliza Dorothy, does not marry after my decease, then it is my will that she shall possess, hold and enjoy the afore-mentioned and above-described negro slaves, with their increase, during her natural life, and upon her death, the said negro slaves, with their increase, shall be equally divided among my present children, surviving her death, or their children, share and share alike, subject to the restrictions above referred to, and hereinafter mentioned and set forth.

3. *Item.* It is also my will that my said wife, Eliza Dorothy, shall be permitted to choose for her residence my plantation now occupied by me near Newnansville, and known as "Standby," or any other place which I may at the time of my death be possessed of or entitled to, and shall be allowed five horses and a carriage, and all necessary farming utensils and implements for the place which she may select; she shall also be allowed one hundred head of cattle, also all the hogs belonging to my place near Newnansville, known as "Standby," and also all the household and kitchen furniture which may be upon my place known as "Standby," at the time of my death; the said place which she may so select, and the said carriage and horses, and the said farming utensils, and the said cattle, and the said hogs, and the said household and kitchen furniture, to be held and enjoyed by her during her natural

life, subject on her marriage or her death to be disposed of as in the above first item specified, and subject to the same restrictions and provisions as aboved referred to and hereinafter set forth and mentioned.

4. *Item.* I hereby give, devise and bequeath to my much beloved daughter, Sarah Angelina, the following-named Negro Slaves, that is to say—Charlotte and her two chidren, Charles and Washington; Jacob and Polly, with their increase, to have, to hold and enjoy during her natural life, and at her death, to be equally divided among my present children or their children surviving her death, subject to the same conditions and restrictions as referred to above, and hereinafter set forth and specified. And I hereby nominate, constitute and appoint my Executors, hereinafter nominated, Trustees for my said beloved daughter, Sarah Angelina, and earnestly recommend her to their special care and protection.

5. *Item.* I also give, devise and bequeath unto the children of my son Charles L., who lately died in Texas, so much of my Estate as their father would have received under this Will, had he survived me, to be paid in money, when they, the said children of my son, the said Charles L., shall respectively arrive at the age of twenty-one years. And I hereby nominate, constitute and appoint my Executors, hereinafter nominated, Trustees for the said minor children of my son, Charles L., deceased, with full power to convert such portion of my Estate as they may be entitled to, into money, and invest the same as may be most advantageous to the said children aforesaid; but if they, the said children of my son, the said Charles L., deceased, die before arriving at the age of twenty-one years, then the property to which they may be severally entitled under this Will shall revert to and be equally divided among my present children or their children surviving the death of the children of my son,

the aforesaid Charles L., deceased, share and share alike, subject to the same restrictions and provisions referred to above in this Will, and hereinafter set forth and mentioned.

6. *Item*. It is my will, that my Tract of Land, lying on or near Paine's Prairie, and known as the "Garey Tract," be not sold until it is worth twenty-five dollars per acre.

7. *Item*. It is further my will, that such portion of my Estate as shall come to my present wife, Eliza Dorothy, under this Will, or to her children, shall be kept together during the life or until the marriage of my present wife, the said Eliza Dorothy, under the direction of my Executors hereinafter nominated; but upon the arrival at twenty-one years of age of any of my children, they may, if they see fit, separate their portion of my Estate which may come to them under this Will, from that of my present wife, Eliza Dorothy, and my other minor children.

8. *Item*. The balance of my Land not disposed of by this Will, and all of my stock of cattle, hogs and horses not disposed of by this Will, and all the cattle, hogs, horses and other stock of which I may die possessed, I direct my Executors, hereinafter nominated, to sell upon the most advantageous terms, and divide the proceeds thereof equally among my children surviving my death, or their children, giving to each his or her share at the age of twenty-one years respectively; and I hereby nominate, constitute and appoint my Executors, hereinafter nominated, Trustees for my children or their children who may be under the age of twenty-one years at the time of my death, until they shall respectively arrive at the age of twenty-one years, with full power and instruction to place the said proceeds at interest, and use the same in the education of my said children or their children, in proportion to their respective shares.

9. *Item*. I Will further that all of my slaves, not hereinbefore disposed of, or of which I may die possessed, shall be,

at my death, equally divided among my surviving children, or their children, in manner and form as hereinbefore specified, subject to conditions and restrictions hereinbefore referred to, and hereinafter set forth and mentioned.

10. *Item.* It is also my Will that such portion of my Estate as shall, under this Will, come to my daughter Mary S., wife of Christian F. Duer, now residing in Texas, or to her children, or their children, shall be held by my Executors, hereinafter nominated, in trust for my said daughter or her children, during the lifetime of the said Christian F. Duer; and I direct my Executors as Trustees, to invest such of her portion as shall be in money, and pay over the interest annually, as well as the proceeds of such as shall be slaves, to my said daughter, or for the benefit of her children; and at the death of said Christian F. Duer, to pay over the whole portion to my said daughter, or her children, subject to the conditions referred to above and hereinafter set forth and fully explained.

11. *Item.* I also bequeath to my Executors, hereinafter nominated, in trust for the Methodist Episcopal Church, in the place where my wife shall choose to reside, provided my wife shall choose to reside at "Standby," or some other place in East Florida, the sum of one thousand dollars, to be paid out of such portion of my Estate as may seem most proper to my Executors, hereinafter nominated, and to be put out at interest by them, and the interest paid annually for the benefit of said Church, but under no circumstances to be paid to any man raised North of Mason and Dixon's Line, or tinctured with Abolitionism in the least degree; and if the said Church where my wife may choose to reside should employ any man as above described, then the interest of the said sum of one thousand dollars shall be applied to a common school in the county where my wife may choose to re-

side, during the time any man as above described is employ-
ed.

12. *Item.* I hereby declare my Will in regard to all my
property, whether personal, real or mixed, disposed of by
this Will, so far as iny children or their children are con-
cerned. Where my property is given, devised and bequeath-
ed or in any manner disposed of by this Will, to any of my chil-
dren, or their children, it is my express will that it shall be
enjoyed by them during their lifetime, and upon their deaths
it shall go to and be vested in their children, if any; and
upon failure of children of any of my children, or their
children, then the property to which my said children or
their children might have been entitled, under this Will,
shall be divided among my surviving children or their child-
ren. And in no case where my property is devised, willed
or bequeathed, or in any manner disposed of to any of my
children, shall they sell or convey the same, nor shall it be
subject to their debts; but the property shall be held for life,
and upon the death of any of my children or grand-children,
where my property is *directly* willed to them, the same shall
go to and vest in their children, and upon the failure of *such*
children, then the property thus held by them upon their
deaths shall be equally divided among my surviving children
or their children.

13. *Item.* It is further my Will that the property
which may come to my son, Amos L.; under this Will, shall
be under the control and management of my Executors,
hereinafter nominated; and shall not, under any circumstan-
ces, be subject to his debs, but he shall only enjoy it during
his natural life, and upon his death it shall go to his children,
subject to the restrictions as in the above last item specified.

14. *Item.* Finally, I hereby nominate, constitute and ap-
point my sons Philip and John, Executors, and my wife,
Eliza Dorothy, Executrix of this my Last Will and Testa-

ment, with full power and instruction to execute the same and the trusts therein named; but it is my will. that my wife, Eliza Dorothy, shall only act as Executrix until my son John arrive the age of twenty-one years.

The bill further shows that soon after the execution of this will, the testator departed this life. The particular date of his decease is not stated, but it is alleged to have occurred in · the year 1855. That upon the death of the testator, the defendant and Eliza Dorothy Dell, who, by said will, were appointed executor and executrix, made probate of the same, and assumed the duties and obligations thereby devolved upon them. John, a son of the testator, was also appointed an executor, but was then under age, and that Eliza Dorothy is dead, and the defendant, Philip, is sole acting executor.

The bill also shows that Amos L. Dell was one of the distributees of the estate of Bennett M. Dell, and that he died sometime in the year 1856, *intestate*, and that on the 20th of July, A. D. 1847, the complainant was appointed administrator of his estate. It further shows that Amos L., the intestate, left surviving him, his wife, Mary E. Dell, and one infant child. Whether this child was born in the life-time of Bennett M. Dell, the testator, or subsequent to his decease, does not appear. That Amos L., the *intestate*, was living at the date of his father's death, and had attained to the age of twenty-one years, and was then entitled to his distributive share of the estate. That the number of heirs and distributees were, at the date of the filing of the bill, nine. That the personal property was appraised at $63,067.49. That the defendant, sometime in the year 1856, pretended to make a distribution of the estate amongst the heirs and distributees, but denies defendant's authority, and the legality of such distribution and settlement, so far as the estate of

Amos L. Dell is concerned.   As the ground of said illegality in relation to Amos L. Dell's estate, the bill alleges that the said distribution and settlement was made without any *notice* having been given to the intestate, and without competent legal authority, and without commissioners appointed by the proper Court for the purpose of distributing said estate.   It further alleges, as ground of objection to said settlement, that the distributable share of Amos L. was charged with the value of five certain named negroes, and avers that the said negroes were the sole and individual property of the intestate, and not a part of the estate of his father, the testator, and should not therefore have been charged against his distributive share.

The bill further states that the defendant has, since the death of Amos L., seized and taken into his possession the said five negroes, and also all the negroes and other property which had been turned over to Amos in his life time, as his share of his father's estate, under a claim as *Trustee* for the infant child of Amos.   The bill denies the validity of defendant's claim as Trustee, and prays a decree against the defendant for an account, and that the ninth part, ( Amos's share, ) of the clear residue of the estate of Bennett M. Dell, deceased, be paid over to the complainant as administrator of Amos L. Dell, and for further relief, &c.   There is no specific prayer for the five negroes alleged to be the individual property of the intestate.   The foregoing is the substance of complainant's bill.

To this bill the defendant filed his answer, in which he embodied a demurrer in the following words, to-wit :   " That he shall insist and does hereby insist, that the said complainant, where in said bill he claims right of discovery and account against this defendant as executor as aforesaid, under and by virtue of the legacy to Amos L. Dell, deceased, in said will of Bennett M. Dell, deceased, contained, has not

made or stated in so much of said bill, such a case as doth or ought to entitle him as administrator of the assets which were of Amos L. Dell, deceased, to any such discovery or relief at is thereby sought and prayed for, from or against this defendant, and he insists upon and sets forth the cause, and prays that he may have the same benefit thereof as if he had demurred to so much and such parts of said bill, to-wit: That inasmuch as it is shown and averred in said bill of complaint, that said Bennett M. Dell, deceased, in* and by said last will and testament bequeathed and devised the said property to be under the control and management of the said defendant as Trustee, and not under any circum⁴ stances to be subject to the debts of said Amos L. Dell, and the said Amos L. Dell was only to enjoy it during his natural life, and upon the death of Amos L. Dell, to his child, that the legal title in said property vested in the said defendant in trust, that the said defendant now holds the same in trust for the said William O. Dell, infant child of said Amos L. Dell, deceased, and that the same were not assets, which were of the said Amos L. Dell, deceased, at the time of his death, and such assets as should be administered upon by the said complainant as such administrator."

The answer goes on and alleges that *all* of the property claimed by the complainant as administrator on the estate of Amos L. Dell, was embraced in and formed the legacy bequeathed and derived under the will of his father, Bennett M. Dell, and come to the possession of and was held by the defendant under and by virtue of the *trust* declared in the said will. It denies the allegation of the bill of a want of *notice* to Amos L. Dell, concerning the distribution and set-tlement of his father's estate, and affirmatively alleges full notice to and affirmation by the said Amos, of the said dis-tribution and settlement. With respect to the five negroes, the answer denies the title of Amos, and alleges that they

only constituted a loan to him from his father, and to be brought into the distribution of his estate whenever made, and asserts the defendant's right to the possession of them, as Trustee, under the terms of the will of Bennett M. Dell. This is the substance of the answer. To this answer, the complainant filed numerous *exceptions*, and the cause was submitted to the consideration of the Chancellor, upon these exceptions, and the demurrer embodied in the answer.

On the 11th day of August, A. D. 1859, the following decree was ordered to be entered in the Chancery Order-Book for the county of Alachua, in the Eastern Circuit of Florida, to-wit:

"This cause came on to be heard on demurrer, and was argued by counsel for the respective parties, and submitted for decision thereon; and the Court having fully considered the same, orders, adjudges and decrees, that the demurrer to complainant's bill is well taken, and the same is sustained.

From this decree, the complainant took an appeal and now brings his cause to this Court for review and final adjudication. The "petition of appeal" filed in this Court, is in the following words, viz:

"In this cause, Ferdinand McLeod, by his solicitors, M. Whit Smith and W. M. Ives, files the following exceptions to the ruling, orders and decrees in said cause :

"1st. For that the presiding Judge held that the complainant's intestate had but a life estate under the will of Bennett M. Dell, whereas, he contends and avers that by virtue of said will, and by force and operation of law, his intestate was entitled to an absolute estate.

"2nd. For that the Judge, in reference to the five slaves, alleged and admitted in the pleadings to have been in the possession of Amos L. Dell prior to, and at the time of making the said will, by B. M. Dell, and which are insisted in

16

the answer to be held by the defendant as Trustee, the said judge declined to make a decree in reference to said slaves, but refers the complainant to his remedy at law; whereas, the complainant alleges and avers that trust estates are exclusively within the jurisdiction of chancery, and that the Judge should have determined and decided the question whether the slaves were properly taken and held by the defendant or not; more especially as the defendant by his answer admits that the said slaves were in possession of Amos L. Dell prior to the making or publishing of said will by Bennett M. Dell, and that the said B. M. Dell was not possessed of said negroes at the time of his death, and the said testator did not mention or allude to said five slaves, in his said will.

"3rd. That the Court having taken jurisdiction of the bill, should have decided and determined all the questions therein, and should have decreed the said five slaves to be delivered to the defendant, as assets of the estate of Amos L. Dell.

"4th. That the Court erred in not sustaining the exceptions filed to the answer of the defendant, and in not requiring a more full and perfect answer.

"5th. That the Court erred in sustaining the demurrer and dissmissing the bill."

*Banks & McLeod* and *Smith & Ives* for appellant.

*J. P. Sanderson* for appellee.

DuPONT, C. J., delivered the opinion of the Court.

Preliminary to a consideration of the questions growing out of the law of this case, and upon which the rights of the parties are to be determined, it may not be out of place to call attention to a point of practice, which seems to have

escaped the observation of the counsel who prepared the " petition of appeal" filed in this Court. The petition sets forth, by way of exceptions, the grounds assumed by the chancellor in his opinion delivered in the Court below, and which it is presumed formed the basis of his decree sustaining the demurrer and ordering the bill to be dismissed. In the case of Smith & Armisted vs. Croom *et al.*, (7 Fla. R., 180,) this Court ruled that the opinion of the chancellor forms no part of the record of the case, and cannot be read or referred to in this Court. The language of the Court in that case is as follows : " We will not feign an ignorance of the source whence the counsel who framed the petition for this application " (*a re-hearing*) " derived the information that the question of the survivorship of the son had passed *sub silentio* before the chancellor. That information we presume was furnished by the printed opinion of the chancellor, which was politely handed to the members of the Court during the progress of the cause, and the perusal of which they did not debar themselves from any false notion of propriety. But it will be distinctly recollected, that the Court refused to permit the same to be read, for the avowed reason that it constituted no part of the record upon which they were called to decide. This Court will always gladly avail itself of the light which may be furnished by the reasoning of the Court below ; but when it comes to decide, it has to do only with the conclusions as they are embodied in the judgment or decree—the logic of the Judge is beyond its control."

Under the rules of practice, as now controlled by the statute, we are constrained to approve the ruling in the case above referred to, but at the same time think that it would be a great improvement if the Legislature would require that every decree in chancery should be accompanied by the written opinion of the chancellor, setting forth the grounds

of the decree, and also that when an appeal is taken, such written opinion shall be embraced in and constitute a part of the record of the case.

In proceeding to this investigation, it must be kept in mind that the questions of law to be discussed arise exclusively upon such state of case as is presented by the face of the complainant's bill. The decree appealed from being upon demurrer, the denials or affirmative allegations of the answer, do not affect the result of the investigation. It is proper also to note that the will of Bennett M. Dell, deceased, having been incorporated into the bill and made a part of the same, exercises a controlling influence in making out the case presented by the complainant.

The hypothesis upon which the claim of the complainant is based, finds its sanction in the doctrine of the law against the encouragement of perpetuities. That doctrine was correctly laid down and ably sustained by the counsel for the complainant, and the only point upon which there can arise a question is as to its application to the case as made in the bill.

The counsel for complainant were understood as insisting that by the "peculiar phraseology" of the devises and bequests made to the complainant's intestate, in the will of defendant's testator, Bennett M. Dell, if applied to real estate, they would have created an "estate tail;" and that position being assumed, the well recognized doctrine was invoked, to the effect, that whenever the words used to make a bequest of personality, would, if applied to realty, create an estate tail, then the first taker will take the absolute interest in the subject matter of the bequest. Upon these two principles of law, the counsel for complainant insist that Amos L. Dell took under his father's will, an absolute estate and interest in all the property devised and bequeathed to him, unrestricted by any of the limitations

therein contained, and that the same are assets of his estate, to which his administrator is entitled. If the *premis* be cortect, then it is beyond question that the *conclusion* arrived at must legitimately follow. We have then to examine whether or not the words used in this will would, if applied to realty, create in the devisee an estate tail?

An "estate tail" may be defined to be, substantially, "a fee conditional at common law, limited to certain heirs, to the exclusion of heirs general—to lineals to the exclusion of collaterals."

It was admitted in the argument that "heirs of the body" are the aptest words to create an estate tail; that they are words of inheritance and pro-creation too, and are as necessary *in a deed* as is the word "heir." But then it was contended that they are not needed (quoting the words of Blackstone) "in *last wills and testaments*, wherein greater indulgence is allowed." 2 Black. Com., 115, margin. Much stress was laid upon this indul-dulgence accorded to the interpretation of the language of wills, in contradistinction to the rule to be observed with reference to that of a deed. But a little reflection, accompanied by a careful examination of the authorities, will suffice to show that such indulgence is allowed only in aid of the intention of the testator; and where that intention is in *equipose* between two contrary constructions, the words used, if they have received a well settled technical meaning, must be interpreted in that technical sense, otherwise they are to be taken according to their common acceptation. Least of all shall such indulgence ever be allowed to defeat the intention of the testator. With these preliminary observations we now proceed to ascertain the precise words used in this will, and the interpretation of which has given rise to this controversy. And here, we may congratulate ourselves that the skilful draughtsman of this will has relieved us

from the irksome task of threading the devious windings of that mazy labyrinth, which has bewildered so many of the brightest luminaries of the law. Throughout this entire will, embracing fourteen distinct items or clauses, as may be seen by reference to the copy incorporated in the statement of the case, those mystical and enigmatical words which have evolved so much of legal lore, and not a little of legal sophistry, " *heir*, " " *issue*," do not appear. Indeed, it would seem that the careful draughtsman, admonished by the experience of the past, had purposely excluded them, lest their presence, even with the commonly recognized limitations and restrictions, might give rise to some question as to the INTENTION of the testator. How illy he has accomplished his benevolent purpose, is abundantly attested by the present controversy.

The words occurring in this will, and which we are called upon to interpret, are, " my children " and " their children." It was insisted by the counsel for the complainant that the word " children " was sufficient to create an *estate tail*, and we were cited to the case of Wood vs. Barrow, reported in 1 East., 259. By reference to that case, it will be seen that the word " children" did not stand by itself, but that it was coupled disjunctively with the more technical word " issue." The devise there was to " my daughter Ann, &c., who shall hold and enjoy the same as a place of inheritance to her and her children, *or her issue, forever*. And if it should so happen that my daughter Ann should die, leaving no child or children, or if it so happen that my daughter Ann's children should die without issue," then over. At the argument of that case, Manley, for the defendant, insisted " that the case fell expressly within the rule laid down in *Wild's case*, that if a man devise land to A. and to his children and issue, and he have then issue, the issue shall take a joint estate for life with A." Lord Kenyon observed

that "there were other words here, namely: that Ann Wood should enjoy the estate *as an inheritance*, to her and her children or issue, *forever*." The italicised words so occur in the report of the case, and would thus seem to have exercised a controlling influence in bringing about the decision that was ultimately made, giving to Ann an *estate tail*. The words of the will before us are not controlled or affected by any such influence.

The case of Doe dem. Gigg vs. Bradley, 16 East., 399, was cited to the same point. The devise in that case was, "to my daughter Sarah Knight's children, to be equally divided between them, share and share alike, and to the survivor of them and their children." It was held in that case that the children of S. K. took an absolute interest in the premises, share and share alike, subject to a survivorship between them for life. By reference to the opinion delivered in that case, it will be observed that the conclusion of the Court was based upon no special stress to be given to the words "their children," but rather upon the evident *intention* of the testator to make "a certain, equal and rational disposition of his property, instead of one which is uncertain, unequal, and to depend upon accident."

The references to 2 Jarman on Wills, 72, 318 and 326, have been examined, and the result of that examination is but to confirm us in the position heretofore laid down, viz : that wherever the word "child" or "children" has received an interpretation extending it beyond its more precise and obvious meaning, as denoting *immediate* offspring, and been considered to have employed as *nomen collectivum*, or synonymous with *issue* or *descendants*, that interpretation has been given in aid of and in deference to the manifest intention of the testator, to be gathered from the whole will. In confirmation of the correctness of this position, we cite 2 Jarm. on Wills, 73, where it is said, in reference to

this ' very point, "where this construction has prevailed, however, it has generally been aided by the context."

To meet and obviate the effect of this position, it was very forcibly insisted by complainant's counsel, that whatever may be the interpretation to be given to the word "child " or "children, " when standing by itself, yet it may be used as a term of *succession*, and thereby import an *indefinite failure of issue ;* and that it is in that sense the testator intended to use it in this will. It is undoubtedly true, that the words may be used in the sense indicated in the argument, and that when so used, if the intended succession exceeds the limits of the prescribed rule, the result will unquestionably follow as contended for by counsel. But the question reverts, did the testator *intend* to use these words to indicate an indefinite succession, or did he intend to use them *substitutionally*, that is, putting the children of any of his immediate offspring that had or should die in the place of their parents ? To determine that question, resort must be had to the peculiar phraseology of the items of the will which are involved in this investigation. It is perhaps unnecessary to set out *in haec verba* any other than the item numbered 12, as it is in that item that the limitations and restrictions occur. The entire will is incorporated in the statement of the case, and can be referred to if desired. The twelfth item is in the following words, viz :

"*Item.* I hereby declare my will in regard to all my property, whether personal, real or mixed, disposed of by this will, so far as my children, or their children are concerned. Where my property is given, devised and bequeathed, or in any manner disposed of by this will, to any of my children, or their children, it is my express will that it shall be enjoyed by them, during their life time, and upon their deaths it shall go to and be vested in their children, if any ; and upon failure of children of any of my child-

ren, or their children, then the property to which my said children, or their children, might have been entitled under this will, shall be divided among my surviving children or their children. And in no case where my property is devised, willed or bequeathed, or in any manner disposed of to any of my children, shall they sell or convey the same, nor shall it be subject to their debts; but the property shall be held for life, and upon the death of any of my children, or grand children, where my property is directly willed to them, the same shall go to and vest in their children; and upon the failure of such children, then the property thus held by them, upon their deaths shall be equally divided among my surviving children or their children."

It will be noted that there are three distinct clauses in this item of the will. The first merely indicates the subject-matter as referring to the property and the beneficiaries thereof, viz: "my children or their children." The second declares the *contingency*, viz: "upon failure of children of any of my children or their children," and also the *limitation*, viz: to "my surviving children or their children." But as if to make assurance doubly sure, the third clause reiterates the contingency and limitation contained in the second, and gives an interpretation to the words "or their children," by substituting the words "or grand children," and appending the very significant qualification indicated by the words "where my property is *directly* willed to them."

And there was ample ground for this extreme particularity of phraseology to be found in the condition of the testator's family at the date of the will, for by reference to the fifth item, it will be seen that the bequest was made *immediately* to the "children" of a deceased son, and not *mediately* through their father. Upon mature consideration of this clause of the will, and with an anxious desire to arrive
17

at the intention of the testator, we are fully satisfied that the words " or their children," were designed to be used as words of *substitution* and not of *succession*. But it is objected to this view of the case that such interpretation is in conflict with the rule of construction commonly referred to as the doctrine of *Wild's case*, which is, that " where lands are devised to a person *and* his children, and he has no child at the time of the devise, the parent takes an *estate tail*." To show the inapplicability of that case, it is only necessary to advert to the *reason* of the rule, as it is given in the books, viz: " that the intent of the devisor is manifest and certain that the children (or issues) should take; and as immediate devisees they cannot take, because they are not *in rerum natura*, and by way of remainder they cannot take, for that was not his (the devisor's) intent, for the gift is immediate, therefore such words shall be taken as words of limitation."

Now, in the will under consideration, the gift is not *immediate* to the children, but mediately through the respective parents; and there is a clear and manifest *intent* that they should take by way of *remainder*. These two particulars are sufficient to distinguish between the two cases and to reconcile any apparent conflict. If we are correct in the foregoing conclusion, it will only remain to enquire whether the limitation over is within the limits of the rule which has been established against the occurrence of " perpetuities." That rule, as well established, is, that the limitation shall not extend beyond " a life or lives in being, and twenty-one years after." In the will before us, the immediate legatee takes (by express words,) only a *life estate*, with remainder over to his child or children; and upon failure of such child or children, then over to the surviving children of the testator, or of such of his children as had taken as immediate legatees. It will thus be seen that the

term of limitation is only for *one life*, and that it does not even trench upon the "twenty-one years after" allowed by the rule, for by the express words of the will, the remainders *vest* immediately upon the termination of the life of the first taker. We conclude then that the limitation in this will is not void for remoteness, but that it is good to pass the property given to Amos L. Dell to the child or children surviving him, by way of vested remainder.

It is objected, however, that by our recognition of the *rule* respecting perpetuities, we come in conflict with the 24th item of our "declaration of rights," which declares "that perpetuities and monopolies are contrary to the genius of a free State, and ought not to be allowed." We are at a loss to comprehend the force of the objection, and do not appreciate its logic. It is a sufficient reply that the convention which ordained that declaration, are to be presumed to have understood the full import of the term used.

It was further objected that "a proviso to an absolute bequest, such as that the first taker shall not alien, or that the estate shall not be subject to his debts, is void." There is no doubt of the law, as thus stated, but its applicability to the bequest in this will is denied. Here, there was no absolute estate given, but only an estate limited to the life of the first taker, and that, too, protected by a *trust* in a third party.

It was further insisted, that as by the terms of the will, the intestate, Amos L. was to be paid at the age of twenty-one, and as he had attained to that age before the death of the testator, the *legal* estate vested in him. This argument, we presume, is predicated upon the phraseology of the eighth item of the will, wherein the testator undertakes to dispose of the balance of his estate not otherwise disposed of, and which directs the Executor to "give to each, his or her share at the age of twenty-one years respectively." Un-

doubtedly, if this was the only item of the will affecting the interest of Amos L., he would have taken the *legal* estate ; but the 13th item is express and beyond cavil as to the interest which he was to have in the property bequeathed to him under the will. That item is in the following words, viz :

"*Item*. It is further my will, that the property which may come to my son Amos L., under this will, shall be under the control and management of my executors, hereinafter nominated ; and shall not, under any circumstances, be subject to his debts, but he shall only enjoy it during his natural life, and upon his death, it shall go to his children, subject to the restrictions as in the above last item specified."

If this be not such a clear declaration of a *trust* as will vest the *legal* title in the executors, and limit the interest to be enjoyed by Amos to the mere *usufruct*, then we are at a loss to conceive a collocation of words which would accomplish that purpose.

We have thus travelled over the entire argument of the counsel in support of the right of the complainant, as administrator on the estate of Amos L. Dell, to have the possession of the property which came to his intestate in his life-time, under the will of his father, Bennett M. Dell, and to administer the same as assets of his estate, and after mature consideration, we are constrained to decide that Amos L. took only a *life estate* in the *usufruct* of the property, and that the same constitutes no part of the estate to be administered by the complainant as his administrator. In arriving at this conclusion, the Court has had necessarily to confine the investigation to the case as made out by the *bill*, un influenced by any of the admissions, denials or allegations of the answer. Of course, the will being made an *exhibit* by the complainant, formed a prominent feature in the statement of his case.

This brings us to the consideration of the second prom-

inent objection to the decree of the chancellor, viz: that the bill ought to have been retained for the purpose of having the title to the five negroes properly adjudicated. The position assumed under this head of the argument was, that "the Court having taken jurisdiction of the case, should dispose of it as a whole, and not refer back the question as a legal one."

The general rule upon this subject, as announced by Mr. Fonblanque, is as follows: "The Court having *acquired cognizance* of the suit for the purpose of discovery, will entertain it for the purpose of relief in most cases of fraud, account, accident and mistake." Fonb Eq., B. 1, ch. 1, § 3, note *f.* The rule as laid down by the Courts of New York is, that "when the Court of Chancery has *gained jurisdiction* of a cause for one purpose, it may retain it generally for relief." Armstrong vs. Gilchrist, 2 John. cases, 424; Rathbone vs. Warren, 10 John R., 587; King vs. Baldwin, 17 John R., 384. According to the terms of the rule as laid down by Fonblanque, it is essential to the granting of the relief, that the Court should first have "acquired cognizance of the suit, and as laid down in New York, that the Court should have "gained jurisdiction of the cause."

Mr. Story, in commenting upon this rule, says: "From what has been already stated, it is manifest, that the jurisdiction in cases of this sort, attaches in equity, solely on the ground of discovery. If, therefore, the discovery is not obtained, or it is used as a mere pretense to give jurisdiction, it would be a gross abuse to entertain the suit in equity, when the whole foundation on which it rests is either disproved, or it is shown to be a colorable disguise, for the purpose of changing the forum of litigation. Hence, to maintain the jurisdiction for relief, as consequent on discovery, it is necessary, in the first place, to allege in the bill that the facts are material to the plaintiff's case, and that the

discovery of them by the defendant is indispensable as proof; for if the facts lie within the knowledge of witnesses, who may be called in a Court of law, that furnishes a sufficient reason for a Court of equity to refuse its aid. The bill must therefore allege ( and if required the fact must be established, ) that the plaintiff is unable to prove such facts by other testimony. In the next place, if the answer wholly denies the matter of fact, of which discovery is sought by the bill, the latter must be dismissed ; for the jurisdiction substantially fails by such a denial." 1 Story Eq. Ju., § 74. Applying the rule as above stated, with the comments of the learned author just quoted, to the point under consideration, and there can be no question but that the Chancellor below did right in refusing to retain the bill for the purpose of having the title to the five slaves adjudicated in that forum. The bill on its face expressly alleges the *legal* title to these slaves to have been in the complainant's intestate, and as expressly negatives a *trust* in the defendant. Neither does it allege any ground which would entitle the complainant to ask for a discovery touching the title to the same. In fact, the Chancellor by sustaining the demurrer, ( which it must be noted was to the whole bill, ) expressly decided, that he had neither " acquired cognizance," nor " gained jurisdiction" of the cause.

Here we might close this opinion, but for a very important question which has suggested itself to the mind of the Court during the progress of this investigation. That question touches the right of the defendant to retain in his possession, and under his control, the property, the *usufruct* of which was given to Amos L. for life. After mature consideration, we are of opinion, that the *trust* created by the will of Bennett M. Dell, in favor of the defendant, expired and became fully *executed* upon the death of Amos L., and that the interest of the infant child, the designated remain-

derman, requires that all of the property to which he may be entitled as such remainderman, should be turned over to a proper guardian, to be appointed by the competent authority.

It is ordered, adjudged and decreed, that the decree of the Chancellor sustaining the demurrer to the bill, be *affirmed* with costs.