Mattie J. Story, a widow, Kate Agnes Story Burch, her husband, Lena M. Story, unmarried, W. L. Story, Jr., and Edward R. Story, a minor, by his natural guardian and next friend, Mattie J. Story, a widow, v. First National Bank and Trust Company, in Orlando, individually and as executor and as Trustee under the will of W. L. Story, Sr., deceased.

156 So. 101.
Opinion Filed June 14, 1934.
Petition for Rehearing Denied July 10, 1934.
Supplemental Petition for Rehearing Denied Aug. 4, 1934

438

*George P. Garrett* and *W. O. Anderson,* for Appellants; *Maguire & Voorhis* and *Giles & Gurney,* for Appellee.

TERRELL, J.—In September, 1929, W. L. Story of Winter Garden, executed his last will and testament, in which he created a trust estate for the benefit of his wife and children, and designated appellee as his executor and trustee. The testator died in March, 1930, and the bill of complaint herein was filed in July, 1931, the heirs of the testator who were also the legatees and devisees under the will being parties complainant. The executor and trustee was made party defendant. The material part of the prayer of the bill is for an interpretation of that part of the will creating the trust estate for the benefit of the wife and children of the testator. An application for the appointment of an administrator *ad litem,* to succeed the trustee and manage the estate pending the litigation, was seasonably made and denied, and appeal therefrom was taken to this Court, resulting in a reversal of the court below. Story v. First National Bank & Trust Company, 103 Fla. 399, 139 So. 179. The merits of the cause were not adjudicated in that case. Various and sundry pleadings, including an answer were then filed and the cause came on to be finally heard by the Chancellor on the motion of complainants for final decree on bill and answer. This motion was denied and the will was upheld *in toto.* The instant appeal is from that decree upholding the validity of the will.

It is first contended that the trust estate as created for the beneficiaries of the testator offends against public policy.

Generally the term "public policy" has reference to the general principles by which public affairs under the government are conducted. In an old case, Richardson v. Mellish, 2 Bing, 229, text 252, 9 E. C. L. 557, Public Policy was described as a very unruly horse, and when once you get astride it you never know where it will carry you. As applied to a rule of law it has reference to statutes which have for their purpose the regulation of personal conduct and relations in the interest of the public welfare. Personal acts and contracts are said to be against public policy when the courts refuse to recognize them for the reason that they have a mischievous tendency, are injurious to the pubic welfare and are contrary to well settled legal or moral principles.

The question then arises, does the will of W. L. Story offend against any well settled legal or moral principle as recognized in this State? Appellants contend that it is contrary to the rule against perpetuities, the rule against restraints or alienation, or as referred to by statute in some jurisdictions, the rule against suspending the power of alienation. The rule against perpetuities and the rule against restraints are well settled rules of law in this state and if the trust created by the Story will, offends against either of them, it must be held invalid and contrary to public policy. Appellants point out nineteen contingencies which they contend might arise under the will, any of which would invalidate it.

The pertinent part of the will brought in question is as follows:

"In the event of the death of any of my children prior to said distribution, leaving heirs of the body, him, her or them surviving, then I direct that said heir or heirs of the one so deceased shall be entitled to the share of the deceased

son or daughter as the case may be, and I direct that my said trustee shall withhold the distribution of said share and continue to perform the duties of trustee with regard to the investment, reinvestment and handling of the estate of said heirs until the youngest of the respective heirs of the deceased son or daughter shall arrive at the age of thirty (30) years, at which time said heir or heirs shall be entitled to receive his, her or their proportionate part of said estate. Provided, however, in the meantime my said trustee shall use such part of the income, or principal, as may be necessary for the support, maintenance and education of such heirs; my intention here being that in the event of the death of a child of mine leaving heirs of the body, him or her surviving, the trustee shall administer the estate of the particular child until the youngest of his or her children shall arrive at the age of thirty (30) years. In the event of the death of any of my children prior to my demise, or prior to the distribution herein provided, without leaving heirs, him or her surviving, then it is my desire that the share of said child or children be proportioned equally among the survivors in the manner contemplated by the terms of this will, the heirs of a deceased child receiving the share which the mother or father would have received if living.

Provision is above made for the retaining by my said trustee of the share in my estate, of my daughter, Kate Agnes Story Burch. As to her share it is my desire that my said trustee shall withhold the distribution of the principal amount thereof during her lifetime but that she be paid upon request her proportionate part of the income from my said estate as provided for the other children, prior to the general distribution thereof as contemplated by this will, and that as to said income paid to her prior to the general distribution that she be charged in the same manner,

and upon the general distribution of my said estate, I direct my said trustee to withhold her share and to continue to perform the duties of trustee with regard to the investment, reinvestment and handling of her share, paying over to her quarter-annually or monthly as she may desire, the net income therefrom, and after her demise, I direct that the whole of her share be divided among her children, the heirs of her body, share and share alike, upon the youngest of her said children arriving at the age of thirty (30) years. Provided, however, in the meantime my said trustee shall use such part of the income or principal as may be necessary for the support and education of said children."

Under the rule against perpetuities, the vesting of an estate under a will or deed can be postponed no longer than a life or lives in being and twenty-one years plus the period of gestation. This was the rule of the common law and prevails in Florida and other states if not modified by statute. Many states have modified it in various ways. "Lives in being" has reference to those living at the date of the testator's death, not at the time of the execution of the will. Under the old common law it was possible by executory devise to perpetuate estates in families so as to prevent their alienation for any period of time or purpose the owner might desire. Such an estate was termed a perpetuity, in other words, a grant or devise wherein the vesting of the interest therein, is unlawfully postponed. Thompson on Real Property, Vol. 3, 722.

The rule against perpetuities concerns itself only with the vesting or commencing of the estate and not with its termination. It was designed to prevent the perpetual entailment of estates and give them over to free and unhampered conveyance. The rule is not applicable to charitable trusts.

At one time, estates in fee simple were inalienable, but the statute *quia emptores,* 18 Edw. 1 c 1 (1289) enabled tenants in fee simple to alienate their lands at pleasure. After this, provisions in deeds or other conveyances for the purpose of restraining alienation, were held invalid. Under the common law, the beneficiary of a trust conveying real estate in fee, in which no one else was interested, could, on becoming of age, ignore and terminate any restraint on his right to alienate it. Such has been termed the rule against restraints or as deduced from statutes attempting to regulate conveyancing, the rule against the suspension of the power of alienation.

There is a distinction between the common law rule against restraints and the statutory rule against suspension of the power of alienation. If the former rule is violated, the restraint only is bad and the enjoyment or possession of the gift is accelerated, while if the latter rule is violated, the interest or gift including the attempt to suspend its vestiture is void *ab initio.* A violation of the latter rule works the same result as a violation of the rule against perpetuities. Having no statute on the subject, we are not concerned with the latter rule in Florida.

In Claflin v. Claflin, 149 Mass. 19, 20 N. E. 454, 3 L. R. A. 370, 14 A. S. R. 393, the common law was modified to provide that a beneficiary may not always be entitled to terminate the trust for him immediately upon coming of age even though no one else has an interest in it (the fund). The effect of this doctrine is to hold that the trust may continue longer than at common law, though it was not determined how much longer. Prof. Kales thinks that under the Claflin Doctrine a beneficiary so situated could insist upon the termination of the trust estate not later than a life

or lives in being plus twenty-one years after the death of the testator, while Prof Gray is of the view that the trust should continue for a life or lives in being after the taking effect of the future interest. The Claflin Doctrine or some other modification of the common law rule has been provided in many states by statute but in this State no change having been made, we are bound by the common law rule.

It is important here to bear in mind the distinction between the effect of the violation of the rule against perpetuities and the rule against restraints. The rule against perpetuities being concerned only with the vesting of estates or interests and being indifferent to their enjoyment, when violated, the gift is void ab initio, but the rule against restraints being concerned only with the time of the vestiture, when violated, the gift is not void but is freed from the restraint and its enjoyment accelerated. It will be seen that both rules have the same ultimate purpose but they serve that purpose by different means. The rule against perpetuities is now about the only check upon the granting of future interests, all the other common law burdens imposed on them having been removed.

In the disposition of the question now under consideration, it must be borne in mind that the rule against perpetuities is directed to remote contingent estates and that it has nothing to do with duration, if they vest within the rule. It is true that there are a few decisions which dispute this rule but it is supported by the weight of authority and the reason for it cannot be questioned. Even in those jurisdictions where a different rule has been approved, the tendency now is to renounce it. Cawthon v. Stearns Culver Lumber Co., 60 Fla. 313, 53 So. 738. Turner v. Safe Deposit and Trust Co., 148 Md. 371, 129 Atl. 294; Slade v. Patten,

68 Me. 380, overruled in Pulitzer v. Livingston, 89 Me. 359, 36 Atl. 635.

The weight of authority in this country also supports the rule that an estate vested does not necessarily include a right to possession. In other words, if the estate vests within the time, it is not subject to the rule against perpetuities, even if the time may be remote when it comes into possession. Reimer v. Smith 105 Fla. 671, 142 So. 603, Gray on Perpetuities 3rd. Ed. Sec. 234.

The doctrine of remoteness being concerned solely with the question of vesting, would in no sense be violated by a will creating a trust, if the estate therein created vests within the time allowed under the rule against perpetuities though possession be deferred and the trust continued after the time fixed for vestiture. Renne v. Smith *supra*. Seaver v. Fitzgerald, 141 Mass. 401, 6 N. E. 73; Cawthon v. Stearn Culver Lumber Co. 60 Fla. 313, 53 So. 738. This rule is almost universal and much error has resulted from failure to bear it in mind. Gray on Perpetuities, 3rd, Ed. Sec. 874.

In Tiffany on Real Property, Section 183, page 609, supporting this rule, it is said that in accordance with the view that the rule against perpetuities applies merely to the time of vesting, and not to the duration of an interest, it is not violated by a limitation of an estate in trust, because, by the terms of its creation, the trust may extend beyond a life or lives in being and twenty-one years thereafter, provided it commence within that time. Perry on Trusts Par. 1447, Gray on Perpetuities pars. 232, 322, 412, 21 R. C. L. 285.

Estates like remainders are either vested or contingent. An estate is vested if at all times during its continuance, it becomes a present estate whenever and however the preceding freehold estates determine; in other words, it is an

estate by which a present interest passes to the party, though to be enjoined in the future, and by which the estate is invariably fixed to remain to a determinate person after the particular estate has been spent. An estate is contingent if in order for it to become a present estate, the fulfillment of some conditions precedent other than the determination of the preceding freehold estates is necessary. If an estate is given to "A" for life, remainder to his oldest son in fee, the remainder is contingent until the birth of "A's" first-born son, and then vests. Gray on Perpetuities 5. The condition on which it is made to depend may never happen or it may not happen till after the termination of the preceding estate.

An inspection of the will of W. L. Story reveals that the testator had in mind these primary objects, (1) That his debts be paid and that his widow be amply provided for, (2) That his infant son, Edward Story be given without charge against him, like educational advantages from his estate as he had given the older children, (3) When these purposes were accomplished, a division of the entire estate be made equally among his children when the youngest child reached the age of thirty (30) years. To insure the carrying out of these purposes and save the will harmless, some rather unusual provisions were incorporated in it but they are not challenged and are immaterial to the questions we have here.

In the matter of distribution the will provides that upon the arrival of the youngest child at the age of thirty, if the wife of the testator be then living, the trustee set apart a sufficient sum to provide a liberal income for her for the balance of her life and that the remainder of the estate be divided equally among the four children of the testator, share and share alike. Except that the part of Kate Agnes

Story Burch shall be retained by the trustee for administration as elsewhere directed. It is also provided that if the wife of the testator die prior to the time his youngest child arrives at the age of thirty, then upon such date the entire estate shall be distributed among the four children, share and share alike.

As to Kate Agnes Story Burch, the will in any event requires that her part be held by the trustee and administered until her youngest child reaches the age of thirty, at which time it is to be divided among her children, the heirs of her body, share and share alike. In the meantime, the trustee is directed to pay to Kate Agnes Story Burch the income from her part of said estate and to use such part of the said income or principal thereof as may be necessary for the support and education of her children.

It is further provided that in the event of the death of any of the children of the testator prior to the time of distribution, leaving heirs of the body, him or them surviving, the portion of the estate distributed under the will, to the said deceased child shall inure to the heirs of his or her body. The trustee is directed to withhold the distribution of the part of said estate inuring to the heirs of any deceased son or daughter till the youngest of them arrive at the age of thirty, at which time it is to be distributed among them equally. In the meantime, it is to be administered by the trustee in the manner provided by the will and any portion of the principal or income therefrom may be used for the support and education of the beneficiaries.

The assault here is directed to that provision of the will for the benefit of the children of Kate Agnes Story Burch not in being at the death of the testator, and the children of any child of the testator who should die before the distribu-

tion of the estate, leaving heirs of the body and not in being at the death of the testator. If all interests vest within the time allowed by the rule against perpetuities, provision for a trust to endure beyond that period, does not violate the rule. We have already demonstrated that when a trust is created in a will to run beyond the period of the rule against perpetuities, it is not made void by the rule against restraints but the sole effect is to accelerate the possession and enjoyment of the gift named in the trust.

We can see no reason at present for holding the will of W. L. Story to be in violation of the rule against perpetuities. There is a present vestiture of the entire estate in the heirs of the testator, though posession is withheld till the youngest child reaches the age of thirty, that is to say, until 1948. The part of Kate Agnes Story Burch is continued in trust for the benefit of her children till the youngest of them reaches the age of thirty. It is shown that she had three children living at the death of the testator. There is no way of telling whether or not she will have others, neither is there any way of knowing whether there will be other grandchildren to participate in the event of the death of any of the children of the testator prior to distribution of the estate, leaving heirs of the body.

If no grandchildren should come into being under either contingency mentioned in the preceding paragraph, then there is no possibility of the trust violating the rule against restraints since we hold that the common law rule for the termination of a trust burdened with restraints on alienation is in effect in this State. It may be that the trust for the benefit of grandchildren not in being, if there should be such, will, under the rule against restraints, have to be terminated before the time provided in the will for it to

run, but this will only accelerate the enjoyment of the gift and will not invalidate the trust or the will.

As to all beneficiaries in being at the death of the testator, the trust is enforceable and whether or not a potential or contingent estate for unborn grandchildren may mature as provided by the will, is not now material. It would not be appropriate at this time to express any opinion as to the rights of grandchildren not in existence. The terms of the will as to plaintiffs can be carried out and they are not in position to complain about how long a trust for possible grandchildren may be permitted to run or when it may be terminated. Van Roy v. Hoover, 96 Fla. 194, 117 So. 887; Rhodes Estates, 147 Pa. 227, 23 Alt. 553; Hermann v. Hermann, 103 N. J. Eq. 113, 142 Atl. 414; Trippe v. National Newark and Essex Banking Co., 98 N. J. Eq. 462, 131 Atl. 162, affirmed in 100 N. J. Eq. 356, 134 Alt. 919; In re Mounts Will, 185 N. Y. 162, 77 N. E. 999, Horton v. Cantwell, 108 N. Y. 255, 15 N. E. 546; Trammell v. Trammell, 162 Tenn. 1, 35 S. W. (2nd) 574.

The question of whether or not an estate is vested or contingent is one to be determined by the intent of the testator, as expressed in the will. In Sorrells v. McNally, 89 Fla. 457, 105 So. 106, we held the rule to be well settled that where there is a devise to an individual or a class upon attaining a certain age, it is *prima facie* contingent; but when the devise carries to the same individual or class, the income from the estate to accrue in the meantime, it will be construed as conferring a vested interest. In other words, the strongest argument against contingency and in support of the yearly vestiture of a devise, no contrary intent being shown is the fact of the provision for enjoyment of the income by the legatee prior to coming in possession of the inheritance.

In the case at bar, the testator had no thought of any one as recipients of his bounty but his wife and four children; the children of Kate Agnes Story Burch, and the children of any child of his that should die prior to the time of distribution under the will. He made provision for his wife in a life estate, provided for all his children to share in the proceeds of the estate till the time of distribution, at which time each child participated alike, the part of Kate Agnes Story Burch continuing in the hands of the trustee but she continued to enjoy the income from it for life. The very terms of the will preclude any other idea than present vestiture.

The law favors the early vesting of estates and in the absence of a clear intention of the testator to the contrary, estates are held to vest at the earliest possible date. If a will is fairly susceptible of two constructions, one of which would turn it into an illegal perpetuity and the other make it valid and operative, the latter should be estopped, as the law presumes that the testator intended to make a binding will. Sorrells v. McNally *supra*. Towle v. Doe, 97 Me. 427, 54 Atl. 1072; Coggins Appeal *supra*. 124 Pa. 10, 16 Atl. 579, 10 A. S. R. 565; Taylor v. Crosson, 11 Del. 145, 98 Atl. 375.

The act of striking down a will is no trivial matter. One who assumes this burden is confronted at the threshold with the presumption that the will is valid, that every presumption must be indulged in favor of its validity, that it must be upheld unless it clearly violates some rule of law or public policy and that if possible, effect must be given to the intent of the testator. The fact that the will is disappointing to the beneficiaries, is inequitable, works an injustice on them and is far from what they would like to have had made, is no ground for setting it aside.

Reduced to its final analysis the contention here is that the will of W. L. Story is violative of the rule against perpetuities and the rule against restraints because of the possibility of heirs being born to Kate Agnes Story Burch after the death of the testator or because some other child of the testator might die before the distribution date leaving heirs of the body born after the death of the testator.

To strike the will down now because of the possibility of either of these contingencies arising would defeat every purpose of the testator as to his wife and children, would destroy the bequest for the benefit of the children in being of Kate Agnes Story Burch and would destroy the contingent bequest for the benefit of any grandchild that may come into being under either contingency for which the will is sought to be set aside. If no grandchildren came into being under either contingency then the entire estate is vested and can be distributed under the will as it is not contended that any law would be violated. It would be highly improper to strike a will down because of a contingency that may never arise and if it should arise it may do nothing more than accelerate the enjoyment of the gift.

It is next contended that the trust created by the will of W. L. Story is in violation of Section 3616 Revised General Statutes of 1920, Section 5481 Compiled General Laws of 1927, which is as follows: "No real estate shall be entailed in this State."

The statute quoted has reference to common law entails which are said to have derived their existence from the statute *de donis*, under which they were made inalienable. where the limitation was to some particular heir or class of issue of the grantee instead of to his heirs generally. An estate tail at common law was an estate of inheritance which a man had to hold to him and the heirs of his body or to him

and particular heirs of his body to the exclusion of heirs generally. Estates tail were originally classified into tenant in tail general or special, the former being an estate limited to the heirs of a man's body, the latter being where the limitation is to certain heirs of the donee's body begotten of a certain wife. There were also estates tail male and estates tail female, the limitation in the first being to the male heirs and in the second to the female heirs of the donee's body. Being an estate of inheritance descending to particular heirs, it is distinguishable from a life estate with a remainder over which is not an estate tail. 10 R. C. L. 656, 657.

The statute *de donis* having no reference to personal property, an estate tail could not be had in that class of property. Under the common law a devise to "A" and the heirs of his body was sufficient to create an estate tail or a devise to "A" for life, remainder to the heirs of his body would create an estate tail in "A" by force of the rule in Shelley's case. In either event the estate tail vests in "A" rather than in the heirs of his body. On the other hand if the limitation over is not postponed until an indefinite failure of issue within a given time, it is settled that the estate will not belong to that class known as estates tail. The word "heirs of the body" was a word of limitation, describing the extent of the ancestors of "A's" estate. If the limitation be to the heirs of his body he takes a fee tail, if to his heirs in general, he takes a fee simple. In no event is the word "heirs" used as a word of purchase designating who takes the estate. Russ v. Russ, 9 Fla. 105, 128.

The rule in Shelley's case concerns itself only with reminders and is as follows:

"Where the ancestor takes an estate of freehold, either legally or equitably, by deed, will or other writing, and in

the same instrument there is a limitation by way of remainder, either with or without the interposition of another estate, of an interest of the same legal or equitable quality, to his heirs or the heirs of his body, as a class of person to take in succession from generation to generation, the limitation to the heirs entitles the ancestor to the whole estate."

Redfearn on Wills and Administration of Estates in Florida, page 248, has the best discussion I have found of the Rule in Shelley's case.

Another method of creating an estate tail at common law was by implication. 10 R. C. L. 659, but it has no application to the facts in this case.

We are dealing here with an executory devise, to which the rule in Shelley's case has no application. The provision in the will which appellant contends violates the Statute prohibiting entails is as follows:

"In the event of the death of any of my children prior to said distribution, leaving heirs of the body, him, her or them surviving, then I direct that said heir or heirs of the one so deceased shall be entitled to the share of the deceased son or daughter as the case may be * * * in the event of the death of any of my children * * * prior to the distribution herein provided, without leaving heirs, him or her surviving, then it is my desire that the share of said child or children be proportioned equally among the survivors."

Inspection of the challenged provision, discloses that the limitation in the will of W. L. Story is not to the heirs of his body as a class to the exclusion of other heirs to take in succession from generation to generation. The bequest is not in words to constitute an estate tail at common law and so far as we can see it is devoid of other elements essential to create an estate tail, which at common law was a

fee conditional, limited to certain heirs, to the exclusion of: heirs general and to lineals to the exclusion of collaterals.' McLeod v. Dell, 9 Fla. 427, 441.

For the reasons announced in this opinion the decree below must be and is hereby affirmed.

Affirmed.

DAVIS, C. J., and WHITFIELD, ELLIS, BROWN and BUFORD, J. J., concur.

### ON PETITION FOR REHEARING.

TERRELL, J.—On petition for rehearing it is pointed out that the court, in the main opinion in this case, overlooked and failed to consider that the following provisions of the will of W. L. Story were arbitrary and invalid and vitiated the entire instrument.

"In the event that the widow shall not consider the terms of the trust stated in the will to be satisfactory to her, but "shall elect to dissent therefrom, I further direct and require, that in such an event, that my said son, W. L. Story, Jr., be excluded from the provisions set forth in Paragraph number second."

"Should it be objectionable to her to leave said personal property and real estate under the general direction of my trustee and executor hereinafter named, then she shall exercise such control over the same as provided by the statutes of the State of Florida, relating to the dower. * * *"

The first of these provisions in effect deprives W. L. Story, Jr., of his part of the father's estate if his mother dissents from the terms of the will and the second has reference to the method of handling that part of the real and personal property constituting the widow's dower in the event she dissents from the will.

These provisions were not overlooked (in the main opinion) but were not discussed in the main opinion because any

advantage the widow might want to take of them depended on her election to accept or dissent from the terms of the will as provided by law, Section 3629 Revised General Statutes of 1920, Section 5493, Compiled General Laws of 1927, which she was required to do within twelve months. The record does not disclose that Mrs. Story has to this date filed a formal dissent to the will with the Probate Judge as the law contemplates. Williams v. Williams, *et al.,* decided May 10, 1934.

W. L. Story died March 24, 1930, his will was probated March 31, 1930, and the bill of complaint herein was filed July 7, 1931, more than fifteen months after the probate of the will. Under Williams v. Williams, *supra,* the filing of this suit with nothing more could not be held to be a dissent from the provisions of the will but if it could, it came too late. The widow is not required to accept the terms of a will in her behalf. Her status in this is different from that of any other heir but if she elects to dissent, she must do so formally.

The questions raised on rehearing are consequently foreclosed by and the petition for rehearing is denied on authority of the last recited case.

Rehearing denied.

DAVIS, C. J., and WHITFIELD and BUFORD, J. J., concur.