SWANN, Judge
(dissenting).
I respectfully dissent from the majority opinion which sets forth the essential facts necessary in this appeal.
The plaintiffs below succeeded in having the trial court invalidate a clear and unambiguous exclusion of insurance coverage by advancing that most amorphous of all legal principles — public policy.[1] In its most concrete sense, public policy “as applied to a rule of law, it has reference to statutes which have for their purpose the regulation of personal conduct and relations in the interest of the public welfare.” Story v. First Nat’l. Bank and Trust Co. in Orlando, 115 Fla. 436, 439, 156 So. 101, 103 (1934). It, thus, becomes necessary to examine the public policy of Florida in regard to uninsured motorist coverage before we can determine whether the contractual exclusion at issue herein violates that public policy.
*720 Moving on to a definition of public policy in this area we find:
“that Florida Statute § 627.0851, F.S.A. established the public policy of this state to be that every insured, within the definition of that term as defined in the policy, is entitled to recover under the policy for the damages he or she would have been able to recover against the offending motorist if that motorist had maintained a policy of liability insurance.” Kohly v. Royal Indemnity Co., Fla.App.1966, 190 So.2d 819, 822, cert. den., Fla., 200 So.2d 813. (Emphasis added.)
The statute, however, is not quite that simple. It provides that no automobile liability insurance shall be delivered or issued for delivery without providing coverage for the protection of persons insured thereunder for uninsured motorist coverage. Fla.Stat. § 627.0851. “However, the law giveth and the law taketh away,”[2] for the statute further provides that “the coverage required under this section shall not be applicable where any insured named in the policy shall reject the coverage.” Fla.Stat. § 627.0851, F.S.A.
Thus, two specific provisions of the uninsured motorist statute are of particular importance in examining the contractual provision at issue herein. The first of these is that the statute does not purport to establish a mandatory scope of coverage. Uninsured motorist coverage need only be extended to “every insured, within the definition of that term as defined in the policy.” Kohly, supra. To this extent the Florida statute differs significantly from those in force in other states.[3]
The second important provision is that the statute (and hence the public policy) does not require automobile liability contracts to have uninsured motorist coverage. It requires that such coverage be offered by the insurance company, but it also gives the named insured the right to reject all such coverage. The failure to carry any uninsured motorist coverage does not violate the public policy of this State. Kohly, supra.
With these principles in mind let us examine the contractual provision at issue. In 1962 William Thompson, Sr., was “shopping around” for a new automobile liability policy. He entered into negotiations with one of defendant’s agents and was told he could get a significantly lower premium than the one of his then-expiring policy if the new policy had an “endorsement to eliminate coverage on the policy for the resident teenagers.” Mr. Thompson, Sr., accepted this policy “because it was [at] a cheaper rate.” It should be emphasized that the policy accepted by Mr. Thompson, Sr., did not provide any coverage whenever one of his specifically named minor sons was driving — i. e., they were not insured under any of the provisions of the policy. It is also important to note that there is no evidence the defendant would not have provided full coverage for Mr. Thompson, Sr., and his sons, if Mr. Thompson, Sr., had been willing to pay a higher premium. Mr. Thompson, Sr., voluntarily rejected any liability coverage when any of his teenage sons were driving the car in order to have lower premiums. He freely and voluntarily received the benefit of his bargain and he and his son now claim the bargain was void.
I fail to see why the insurance contract entered into between these parties was so reprehensible as to be void. I also fail to see how it violates the statute which *721 establishes the public policy of this State.[4] If Mr. Thompson, Sr., had rejected all uninsured motorist coverage in order to obtain a lower premium the contract would not be void. How then can a partial rejection of coverage in order to obtain a reduction of premium be so inimical as to be void? Such a holding of invalidity only where coverage is partially rejected would be a classic non sequitur.
Furthermore, how can the specific exclusion of Mr. Thompson’s three minor sons be void when this statute calls for coverage only for those persons named as insured as defined by the policy and Mr. Thompson, Sr., was named as the insured in this policy? If the legislature had intended a mandatory scope of coverage for uninsured motorist protection it would have so provided, as the legislatures of other States have done.
If we hold Mr. Thompson could not exclude his sons from coverage as named insureds, when driving, then the question arises as to whether he could validly exclude anyone. Surely, if a mandatory scope of coverage is to be imposed on the insuror and the insured (with the consequent higher premiums) such imposition must come by legislative fiat, not judicial decision under the guise of public policy.
Plaintiffs persuasively argue that First Nat’l Ins. Co. of America v. Devine, Fla. App.1968, 211 So.2d 587, requires an affirmance. I disagree. In that case the insuror, although the insured had paid the premium for uninsured motorist coverage, had inserted in the contract a clause excluding from all liability any person (whether the driver of the automobile or not) under age 25 who was not a relative of the named insured.
I view that case as standing for the proposition that the insuror cannot “whittle away” its uninsured motorist coverage by unilaterally excluding classes of persons from coverage. I consider the case as one attempting to provide policy holders with relief from insurance companies which attempt to impose disclaimers of their liability in an adhesion situation. If the present case presented an adhesion situation plaintiff’s public policy argument might have merit. See, e. g., Manheim v. Ford Motor Co., Fla.1967, 201 So.2d 440; Henningsen v. Bloomfield Motors, Inc., N.J.1960, 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1. Under the record in this case, it appears that all Mr. Thompson had to do if he wanted coverage when his teenage sons were driving this automobile was to pay for it.
Where the legislature has required a driver to be insured it has made its intent clear. See Fla.Stat. § 324.011 et seq., F.S.A. I find nothing in this statute, or public policy of Florida, which would compel Mr. Thompson, Sr., or the insuror to insure his minor sons for uninsured motor coverage when they were driving. Hence, I would reverse the judgment below.

. The late Justice Glenn Terrell once noted that “public policy [has been] described as a very unruly horse, and once you get astride it, you never know where it will carry you.” Story v. First Nat’l Bank and Trust Co. in Orlando, 115 Fla. 436, 439, 156 So. 101, 103 (1934).

. Kohly v. Royal Indemnity Co., Fla.App. 1966, 190 So.2d 819, 822.

. e. g., In Virginia coverage must extend to the “ ‘Named Insured’ and also ‘any person while using the automobile * * *, provided the actual use * * * is by the Named Insured,’ or his spouse ‘or with the permission of either.’ ” Nationwide Mutual Ins. Co. v. Cole, 1962, 203 Va. 337, 124 S.E.2d 203, 206. The same was previously true in California. Bohrn v. State Farm Mutual Automobile Ins. Co., 1964, 226 Cal.App. 497, 38 Cal. Rptr. 77.

. It is only in the most extreme circumstances that a contract which does not violate a constitutional or statutory provision is subject to being stricken as contrary to public policy. Bituminous Cas. Corp. v. Williams, 154 Fla. 191, 17 So.2d 98 (1944).