This is a bill for the construction of the will and codicil of Henry V. Herrmann, who died on May 13th, 1924. The tenth clause of the will, which is the only one in dispute, reads as follows:
"All the rest, residue and remainder of my estate, real and personal, of which I may die seized or possessed, or to which I may be entitled at the time of my decease, of whatsoever nature and description, and wheresoever situated, I do give, devise and bequeath unto my executors hereinafter named, in trust nevertheless, and for the following uses and purposes, that is to say: That they shall collect and receive the rents, interest and income arising therefrom, and after paying therefrom and thereout all taxes, assessments, water rents, charges and expenses of every kind and description connected with the protection and management thereof, they shall pay the residue of said rents, interest and income unto my brother C. Theodor Herrmann, during his natural life, and upon his death —
"(1) In the event that my said brother C. Theodor Herrmann shall leave a child or children him surviving, then I direct my said executors to divide the said rest, residue and remainder of my estate so held in trust for the benefit of my said brother C. Theodor Herrmann, into as many equal shares as there are children of my said brother living at the time of his decease, and to set apart one of such shares for each child of my said brother living at the time of his decease, and to collect and receive the rents, interest and income arising from such share, and after paying therefrom and thereout all taxes, assessments, water rents, charges and expenses of every kind and description connected with the protection and management of said share, they shall pay the residue of said rents, interest and income unto the child of my said brother for whose benefit the said share shall have been so set apart, during his or her natural life, and upon the death of the child for whose benefit the said share shall have been so set apart, my said executors shall pay over the principal of the said share unto the issue of the said child for whose benefit the said share shall have been so set apart, to be divided equally among such issue, share and share alike, for their own use and benefit, absolutely and forever; and in default of such issue then living, then the principal of said share shall be paid over unto the surviving brothers and sisters of such deceased child, and the issue of any deceased brothers and sisters of such deceased child, share and share alike, for their own use and benefit, absolutely and forever; such issue, however, to take the share which the parent would have taken if living; and if there be no brother or sister of such deceased child, or issue of any deceased brother or sister of such deceased child, then living, then the principal of said share shall be paid over as follows. viz.: Unto Alfred S. Brown, of the city of New York, the sum of ten thousand dollars thereof, and to Frederick Feibel, of Jersey City Heights, New Jersey, the sum of ten thousand dollars thereof; and all the rest, residue and remainder thereof unto Grace *Page 115 
Cranstoun Herrmann, wife of the said C. Theodor Herrmann, for her own use and benefit absolutely and forever.
"(2) In the event that my said brother C. Theodor Herrmann shall not leave any child or children him surviving, then, upon his decease, I do give, devise and bequeath the said rest, residue and remainder of my estate so held in trust for his benefit, as follows: Unto Alfred S. Brown, of the city of New York, the sum of ten thousand dollars thereof, and unto Frederick Feibel, of Jersey City Heights, New Jersey, the sum of ten thousand dollars thereof; and all the rest, residue and remainder thereof unto Grace Cranstoun Herrmann, wife of the said C. Theodor Herrmann, for her own use and benefit absolutely and forever."
It will be seen, therefore, that the residuary estate is given to the executors as trustes for the following purposes: To pay to C. Theodor Herrmann during his lifetime the income; at his death they are to divide the estate into as many equal shares as there are children of his living at his decease, and to pay the income to these children during their lives; at their death the principal is to go to their children. Failing issue of the children of C. Theodor the residue to go to Grace C. Herrmann absolutely, subject to two bequests of $10,000. One of these to Frederick Feibel has lapsed because of his death before that of the testator.
When testator died there were surviving him his brother, C. Theodor Herrmann, and two children of C. Theodor, Gladys and Vietor, now thirty and twenty-one years old respectively, both unmarried, and Grace C. Herrmann. It seems to be admitted by all parties to the controversy that C. Theodor Herrmann has a vested life interest in possession. His claim is that all the gifts over after his life estate are void as in violation of the rule against perpetuities; and that, therefore, there is a merger in him of his life interest and his interest as sole next of kin and heir-at-law because of intestacy; therefore he receives the fee.
It will be observed that the will gives the residuary estate to the executors in trust, first to pay the income to C. Theodor Herrmann for life; on his death the residuary estate is to be divided into as many shares as there are children of his living at his death, and to pay the income of each share to the child for whom the share is set apart, and at that child's death to pay the principal over to that child's issue, or in default *Page 116 
of issue to the survivor. If there be no survivor or issue of survivor then to Grace C. Herrmann.
The trustees, therefore, have the legal title; C. Theodor has a life interest therein, and the children, Gladys and Vietor, also have a life interest subject to their father's life interest. So that as to each share there is a trust and a suspension for only two lives in being at testator's death. This is not against the statute of perpetuities.
The birth of another child to C. Theodor Herrmann would not invalidate the shares of Gladys and Vietor. It would merely diminish the amount of their income, as, for example, there would be three shares instead of two. The case of Mount, 185 N.Y. 162,
seems to be in point.
Chief-Justice Cullen in his opinion says:
"The testator's sister is now seventy-six years old. The testator's nephew, Richard H. Mount, is over fifty years old. He had at the execution of the will two children who still survive — Edward, now aged thirty, and Harold aged twenty-three. His wife, the mother of these two children, is still living. The elder son is married, and pending this appeal has had a child born. The younger is unmarried. Bearing in mind the age of his wife and that of the children, the strong probability is that Richard Mount will have no other children by his present wife. She may die, he may marry again and have children. But for such an event to have any bearing on the present controversy, the child must be born before the present equitable life tenant, a lady seventy-six years old, dies. Therefore, the chances are decidedly against such an occurrence. If it does not happen, and the two sons of the nephew now living survive their grandaunt, there will be only a single question to determine — that is, whether the direction in the will to divide the corpus into shares for all the children of the testatrix's nephew, which would include children who might be born after her death, renders the provision, so far as it applies to children living at her death, illegal and void. If this provision is valid as to those children, no other question can arise under the will, because the remainders given on the death of those children are clearly good. We are inclined to the view that this question is a comparatively simple one. *Page 117 
"* * * (at p. 169): If the trust was to continue in solido
for the benefit of all the nephew's children who might survive their grandaunt, it would be void, not only because it might depend on lives not in being at the death of the testatrix, but also because its continuance might last over a greater number of lives than that prescribed by the statute. But on the death of the sister, the corpus is to be divided into several shares according to the number of children the nephew may then have, including the issue of any deceased child. The trust as to each share terminates with the life of the beneficiary. Therefore, as to the share of a child of the testatrix's nephew living at her death, the suspension is for two lives authorized by statute, to wit, the testatrix's sister, and the equitable life tenant of the particular share. It matters not that the whole corpus is not released at the termination of any two specified lives. An entire estate may be held in trust for one beneficiary for life, and on his death may then be divided into shares, each of which may be held in trust for a second separate life [citing cases]. It is not at all necessary that the testator create a single trust in a single piece of property. He may create separate trusts in undivided interests. The validity of each of such trusts is dependent solely on its terms and not on the fate or validity of the others. If, therefore, the nephew should have children born after the testatrix's death and surviving her sister, their existence would serve to cut down the shares to be held in trust for the children living at the testatrix's decease. But we do not see how the invalidity of the testamentary disposition in favor of such after-born children can affect the legality of the trust in favor of the existing children."
I therefore find that the devise to C. Theodor Herrmann is for life only, and that the life estates of Gladys and Vietor became vested at the death of the testator.
It follows that the claim of C. Theodor that he is now vested with the whole beneficial interest in the residuary estate is without merit.
It is urged that the will provides in effect that if there be other children in addition to those now in being, they shall have life interests with remainder to their children. This, *Page 118 
it is contended, would violate the statute of perpetuities, because there might not be a vesting within twenty-one years after the death of living persons.
This being so, it is urged that the whole tenth clause above quoted must fall because the provisions are so intermingled as to be inseparable. I believe that this contention is not sound. The purpose of the will is plain. The testator was unmarried and he desired to provide for his brother and his brother's family. This he did as far as he, at the time of drawing the will, was able. He remembered his brother and his brother's children, and he evidently desired his estate to descend in the blood of his brother. Failing any issue of his brothers' children, he left the residue to his brother's wife. This is a normal method of disposition, and to give all the property now to the brother would be, in my opinion, clearly against the testator's wishes. As I have above indicated, the life interests of his brother, and his brothers' now living children, are perfectly valid and clearly distinguishable from the rest of the clause.
It does not seem to me that at this time this court is called upon to decide what would be the effect on the will if C. Theodor had other children, or if he died leaving none surviving him, or if they died without issue, or if Grace C. Herrmann, the final remainderman, died in the lifetime of the life tenants.
These are questions of no present concern. They may never come up for determination.
The will is valid as to all parties now in being and to construe it in regard to those not now in existence is unnecessary, and might be prejudicial to them should they ever come into existence.
"A court of equity will not take jurisdiction of a suit for a construction of a will unless it can afford immediate relief. It will not undertake, where there is no matter in dispute, to declare future rights, nor will it ever undertake to decide upon and determine contingencies which may never arise, unless such determination is necessary for the decision of some immediate relief to be granted, and which it can enforce by a decree." 40Cyc. 1845, 1846. *Page 119 
In the case of Ogden v. McLane, 73 N.J. Eq. 159,
Vice-Chancellor Stevenson said:
"This court will not instruct trustees in regard to their duty with respect to the payment or transfer of the trust estate in their hands until the time for such payment and transfer has arrived. When the time to act arrives, the parties who then shall be affected by the action of the trustee are entitled to be heard; they are the parties who argue the question, the determination of which directly affects their interests."
I will advise a decree in accordance with these conclusions.