PEARL MILLER, *et vir,* v. E. H. CARR, as Executor of the Last Will and Testament of Alonzo A. Carr, Deceased.

188 So. 103.
Opinion Filed April 4, 1939.
Rehearing Denied May 2, 1939.

*Ellis F. Davis* and *George Palmer Garrett,* for Plaintiff in Error.

*Lawrence Rogers* and *W. J. Steed,* for Defendant in Error.

CHAPMAN, J.—This case is here on writ of error to a judgment on demurrer directed to counts one, two, three and four of the third amended declaration. An order was entered by the lower court sustaining the demurrer when the plaintiff declined to plead further, and a judgment was entered for defendant and writ of error was sued out to this court.

Count one of the third amended declaration alleged substantially that Alonzo A. Carr, on March 20, 1936, orally promised Pearl Miller and her husband, William Miller, that if they would move to his (Alonzo A. Carr's) home in St. Cloud, Florida, and take care of him as long as he lived that he, Alonzo A. Carr, would deed to Pearl Miller certain described real estate located in the Town of St. Cloud and give her one-half of the royalties from his oil property in Pennsylvania. The offer was accepted and Pearl Miller, pursuant to the oral agreement, moved to Carr's home at St. Cloud, took care of him—keeping his house, preparing and serving the meals, going wherever he asked, and furnished him constant companionship and nursed him until placed in a hospital shortly prior to his death on May 14, 1936. Pursuant to the oral agreement he executed and delivered to Pearl Miller a deed to the described real estate, but failed to leave Pearl Miller, in his last will and testament, *one-half of the royalties* from his oil property in Pennsylvania, the value of which approximated $100.00 per month and was for oil extracted from

the Pennsylvania lands. She filed her claim with the Executor but payment was refused.

The second count of the third amended declaration is substantially the same as the first, with the exception that it alleged that Alonzo A. Carr would leave to the said Pearl Miller in his last will and testament *one-fourth of the royalties* on oil extracted from his property in Pennsylvania.

The third count of the declaration is substantially the same as count one, except it is alleged that Alonzo A. Carr would deed Pearl Miller certain described lands situated in St. Cloud, being the home of Alonzo A. Carr, and leave the said Pearl Miller, in his last will and testament, an undivided *one-half interest in his oil property* in Pennsylvania.

The fourth count of the declaration is substantially the same as count one, except that it is alleged that Alonzo A. Carr, in addition to the home place, would leave Pearl Miller an *undivided one-fourth interest in his oil property* in Pennsylvania.

Exhibits were attached and by appropriate allegations made a part of the declaration and the different counts thereof.

The demurrer was directed to each count thereof and contained a number of grounds, and, broadly stated, are viz.: (a) that each count failed to state a cause of action; (b) each count is void under the Statute of Frauds; (c) the alleged oral contract was for a sale of an interest in lands and was void because of the Statute of Frauds; (d) the oil royalties or interest in the oil property is an oral contract and not enforceable in an action at law. The lower court, on notice of hearing, entered an order sustaining the demurrer, and this adverse ruling is argued as error in this Court.

It appears that one of the first questions to be decided

is whether or not an oral agreement to make provisions in a will to leave oil royalties and an undivided interest in his oil property in Pennsylvania, in return for keeping his house, preparing and serving the meals, furnishing constant companionship, and nursing him when sick and as long as he lived, is a binding and enforceable agreement in law?

This Court has held that oral contracts of this character in some instances will be sustained in the absence of a statute requiring them to be in writing. The law requires that when a person is seeking to recover under one of these contracts, the same must be established by clear and convincing testimony. The case of Exchange Nat. Bank of Tampa v. Bryan, 122 Fla. 479, 165 So. 685, was a suit to recover $50,000.00 which was to be provided for by will on the part of Hiram L. Stevenson for and in behalf of Mrs. Bryan if she would furnish him (Stevenson) board, lodging, care, and a home for the remainder of his life, and for which he agreed to pay $100.00 per month and leave her $50,000.00 at h.s death. He paid her the monthly sum of $100.00, but failed to provide the $50,0000.00 for her at his death as he agreed to do. Suit was brought by Mrs. Bryan, after full performance on her part of the oral contract, against the Administrator of the estate for the $50,000.00. There was a verdict and judgment for the plaintiff in the lower court and on appeal was affirmed in this Court. Involved in the suit was personal property and not real estate or an interest therein. We therefore hold that the plaintiff in the court below had a cause of action under the case of Exchange Nat. Bank of Tampa v. Bryan, *supra,* provided: (a) the interest in the royalties and (b) the undivided interest in the oil property situated in Pennsylvania can be considered or classified as ·personal property. There does not exist in Florida a statute controll.ng oil or petroleum products throwing light upon the points

now before us. The Florida law is settled as to contracts concerning real property, which holds or requires that such contracts must be in writing.

In the case of Mills v. Joiner, 20 Fla. 479, the daughter and her husband brought suit against her father to recover for the value of work by her performed for the defendant at his request. The plaintiff testified that after her mother's death in 1873, her father, the defendant, orally promised the plaintiff (defendant's daughter) that if she would live with him and serve him as she had done during the mother's lifetime, until his death, or sooner discharged, that he, the defendant, would give to the plaintiff a certain piece of land situated in Gadsden County, Florida. There was no written instrument expressing the agreement of the parties as was testified to. There was a provision in the will of the defendant devising to his daughter, the plaintiff, the land as agreed upon but the will was subsequently destroyed and the land conveyed to another. It was held that the agreement was in contravention of the Statute of Frauds and void. The law of Pennsylvania requiring agreements as to lands or interest therein be put in writing is substantially the same as the law of Florida. We therefore hold that as there was an oral and not a written agreement to leave an undivided interest in his oil property in Pennsylvania to Pearl Miller, there cannot be a recovery under counts three and four of the declaration, and there was no error in the order sustaining a demurrer thereto as applied to counts three and four.

Devlin on Real Estate, Volume 1, par. 54, page 81, says: "Agreement to Devise Interests in Land.—The principle is firmly established that a promise to make a will of a testator's real property is a contract for the conveyance of lands, and must be by a deed or written instrument; and when made in this manner, upon a sufficient consideration,

it is valid and binding, and will be enforced by a court of equity. So, also, an oral agreement to devise is good if no real estate is involved. Likewise, such an agreement may be enforced where one of the parties has fully performed his part thereof."

The next question for decision is whether or not the interest in the royalties is personal property or an interest in land. If the interest in the royalties is personal property, then counts one and two each state a cause of action. If the interest in the royalties is an interest in land, and controlled by an oral agreement to leave same to Pearl Miller, then counts one and two of the declaration fail to state a cause of action. The material portion of the lease, by appropriate words made a part of counts one and two, is viz.:

"* * * said party of the second part his heirs or assigns, further covenants and agrees to deliver to the parties of the first part their heirs or assigns one-eighth (1/8) of all the oil produced by any and all well or wells drilled on said land, said oil to be delivered to the credit of said parties of the first part, their heirs or assigns, in marketable condition, to such accessible pipe line company as shall be designated and approved by the said parties of the first part, the party of the second part agrees to deliver to the parties of the first part one eighth (1/8) of all the products obtained from any gas obtained from said lot whether in the form of gasolene or any other marketable product."

This Court has held that growing trees are a part of the land, but that the trees lose the character of real estate when severed from the soil. See Walters v. Sheffield, 75 Fla. 505, 78 So. 539. Likewise, crude turpentine gum in containers or boxes cut in pine trees in condition to be dipped up is classified as personal property. See Melrose Mfg. Co. v. Kennedy, 59 Fla. 312, 51 So. 595. Crops of citrus fruit

growing on trees are, in general, part of the realty, but when severed from the trees the fruit becomes personal property. See Simmons v. Willford, 60 Fla. 359, 53 So. 452, Ann. Cas. 1912C, 735. Counts 3 and 4 of the Declaration do not state a cause of action.

It will be observed that the oil lease, *supra,* provides for one-eighth of all the oil produced by each well on the land described to be placed in a marketable condition, accessible to pipe lines, and the agreement covers gasoline or other marketable products. The instrument contemplates the removal of the oil from the ground and placing it in a reservoir to be connected with pipe lines, and that a one-eighth interest thereof is to be the property of Alonzo A. Carr as rents or royalties. While counts one and two refer to oil royalties, the authorities in general are uniform in holding that the terms "rents" and "royalties" are synonymous, as shown by 40 C. J. 632, page 1027, viz.:

"RENTS AND ROYALTIES—(1) IN GENERAL. Generally speaking the rules of law which govern the rights and liabilities of the parties as to rents under leases in general apply in case of mining leases, except to the extent that the peculiar nature, terms, and conditions of mining leases give rise to different rules and principles.

" 'RENT' AND 'ROYALTY' DISTINGUISHED. The terms 'rent' and 'royalty,' as a result of usage and custom, are frequently, although not technically or accurately, employed interchangeably in mining leases to convey the same meaning, and ordinarily the 'royalties' in the case of such leases constitute rent. But 'royalty' is the more appropriate term where rental is based upon the quantity of coal or other mineral that is or may be taken from a mine, and as so used it means a certain percentage or proportion specifically stated or on a graduated scale according to the value of the ore, based on either the net proceeds, smelter returns,

mill returns, returns of assay office, or otherwise as the parties may agree."

And also par. 728, page 1102, *supra*.

"RENTS OR ROYALTIES—(1) IN GENERAL. The rights and liabilities of the parties in respect of the payment of rents or royalties under an oil or gas lease are governed by the terms of the lease as construed by the general rules of construction in connection with the surrounding facts and circumstances. If the lease contains a stipulation to pay a certain rental until a well is completed, or until the expiration of a certain fixed term, the lessee is bound to pay such rental, although he does not, within such term, enter on the land and complete such well, unless he is prevented from doing so by the lessor. But where a lease provides that it shall be null and void if a well is not completed within a designated period, unless the lesee shall thereafter pay a fixed rental for each specified period of delay, each payment to extend the time for completion of the well for such period and no longer, the periodical payment is only a condition precedent and necessary to maintain the vitality of the lease until a well is completed, and the agreement is not a covenant to pay a designated rental until the completion of a well. A covenant to pay rent after a fixed date for each piece of land on which wells had not been drilled and operated is not affected by extensions of that time in which drilling might be commenced; and under some leases a failure to drill within the time prescribed imposes liability for rent for the full term of the lease, although wells are subsequently drilled."

In Thornton on The Law of Oil and Gas, Volume 1, (3rd Ed.) pars. 252-253, pages 386-388, it was said:

"VARIOUS METHODS OF FIXING RENTS OF ROYALTIES.—There are various methods in vogue in fixing the rents

or royalties that shall be paid for a mining or oil lease. Thus, the rent may be (1) a fixed sum; or an (2) annual or other periodical sum; or (3) a royalty on the amount of the minerals or oil mined or produced, payable at fixed intervals or times; or (4) a royalty, not, however, less in the aggregate than a specified sum each year; or (5) a royalty accompanied by a covenant to mine a certain min mum amount or pay a certain sum thereon; or (6) in case of a gas lease, to bore so many wells and pay so much a well, or forfeit a certain sum per well for a failure to bore the required number; or (7) in case of an oil lease, to pay a certain percentage of the oil taken out of the premises. It is believed that these divisions practically cover all methods used in fixing the amount the lessee shall pay the lessor, aside from the covenants to erect improvements on the leased lands, or make repairs, or develop the premises leased.

"A ROYALTY IS RENT.—'MINING RENT.' Royalty is another term for rent, but is limited (except such as given an author for the privilege of publishing his book, or a patentee for the use of a patent) to rents due for the right of privilege of taking minerals, oil or gas out of a designated tract of land. In the discussion hereafter, a distinction will be drawn between 'rent' as such and 'purchase money' under an instrument selling mineral and oil beneath the surface of a specified tract; and in such an instance whatever would not be a 'rent' cannot be a 'royalty,' but must be 'purchase money.' In practice the term 'mining rent' is used to designate the consideration given for a mining lease, whether such lease creates a tenancy, conveys a fee, or grants an incorporeal right or a mere license. Its true significance must be read or determined in connection with the rights granted. So care must be taken to distinguish between rent and royalty in connection with gas and

oil leases. Rent is the term applied to the privilege given to bore for gas and oil for delay in beginning operations; while royalty is a certain percentage of oil after it is found, or so much per gas well developed. Even in the latter instance the amount to be paid may be regulated by the amount of the pressure of the gas."

See Arrington v. United Royalty Co., 188 Ark. 270, 65 S. W. (2d) 36, 90 A. L. R. 765, and annotations pages 770-783; Callahan v. Martin, 3 Cal. (2d) 110, 43 Pac. (2d) 788, 101 A. L. R. 871, and annotations pages 884-893.

The lease, *supra,* did not give to the lessee the exclusive possession of the entire tract of land therein described, but only the right of ingress and egress over the same while engaged in moving therefrom the oil and gas. When the oil or gas was taken from the land it was divided, when the lessee became the owner of seven-eighths and Alonzo A. Carr, under the terms of the lease, became the owner of one-eighth interest in the oil as rents of royalties. The lessee had under the terms of the lease the right and privilege only of taking the oil from the land and none other. If the lessee failed to pay for the one-eighth of the oil or gas as rent or royalty then the right of eviction accrued to Alonzo A. Carr. See Union Petroleum Co. v. Bliven Petroleum Co., 22 Pa. 173. The weight of authority appears to be that royalties under an oil or gas lease, when the oil is severed from the land, is personal property. See Arrington v. United Royalty Co., *supra.* The burden is on the plaintiffs to allege and prove that they are entitled to royalties on oil severed from the land prior to the death of Alonzo A. Carr.

It is not alleged in either of the first two counts that the decedent had by a proper instrument in writing severed his ownership of the land and of the oil therein, if that can be done; and as at the death of decedent, oil that had not then

in fact been severed from the lands was a part of the realty, and descended to his heirs, and could not pass by oral contract to devise; consequently counts one and two allege a cause of action only if interpreted and appl.ed to *limit* the claimed royalties to those due for oil severed from the lands prior to the death of the decedent. See United States v. Noble, 237 U. S. 74, text p. 80.

The order sustaining the demurrer and dismissing the cause of action as to counts three and four was not error, but as to counts one and two the order is affirmed without prejudice to amend.

It is so ordered.

TERRELL, C. J., and WHITFIELD, BROWN, BUFORD and THOMAS, J. J., concur.