HANSON *v.* WARE.

5-538                                      274 S. W. 2d 359

Opinion delivered January 10, 1955.

*Wade Kitchens* and *W. H. Kitchens, Jr.,* for appellant.

*McKay, McKay & Anderson,* for appellee.

GEORGE ROSE SMITH, J. In this case the issues, raised by demurrer to the complaint, relate to the construction of an instrument entered into in 1919 between the appellant's parents on the one side and the appellees Ware and Owens on the other. In sustaining the defendants' demurrer and dismissing the complaint the chancellor in effect construed the instrument in dispute as a deed by which the Hansons conveyed to the appellees a perpetual

nonparticipating oil and gas royalty in certain land. The appellant now contends (*a*) that the deed conveyed an interest only in the royalty under a particular oil and gas lease, which expired long ago, and (*b*) that if the deed be treated as an attempt to create an interest in the royalty under subsequent leases as well as under the then existing lease it violates the rule against perpetuities and is void.

The complaint alleges that the plaintiff now owns certain land that formerly belonged to his father, Tom Hanson. On September 19, 1919, Tom Hanson and his wife executed a five-year oil and gas lease to W. D. Wingfield; but Wingfield failed to obtain production, and the lease expired by its terms in 1924. The complaint seeks cancellation, as a cloud upon the plaintiff's title, of an instrument which the Hansons executed some two months after the date of the Wingfield lease.

This second document was prepared with a view to enabling the parties to contract both with respect to lands already under lease and with respect to lands not under lease. As will be seen, the Hansons did not include lands of the latter type, the space for their description having been left blank. In copying the instrument in question we have italicized its numerous typographical errors:

## "CONTRACT

"This agreement made and enter*d* into on this the 28 day of November A.D. 1919, by and between Tom Hanson and his wife, Dollie Hanson, of Columbia County, Arkansas, parties of the first part and S. A. Ware and W. T. Owens, parties of the second part, WITNESSETH: That, WHEREAS, the parties of the first part heretofore entered into an agreement with W. D. Wingfi*led* by which they granted, demised, leased and let unto the said W. D. Wingfi*led* and unto th*ier* successors and assigns for the sole and only purpose of mining and operatin*f ro* oil and gas and of laying pipe lines, constructio*ng* tanks, buildings and other structures thereon to

take care of said products, the following lands lying in the County of Columbia and State of Arkansas, to-wit: [here 192 acres are described]. AND, WHEREAS, by the terms of said contract W. D. Wingfi*l*ed their*s* successors or assigns contracted to deliver to the said *c*oredit of the said Tom Hanson, party of the first part, hereto, his heirs or assigns, free of cost, in *gua*ge tanks, to which the said W. D. Wingfi*l*ed their successors or assigns may connect their wells, the equal one-eigh*t* part of all oil produced and saved from the leased premises aforesaid, and, WHEREAS, the said parties of the first part are the owners of the following additional land and all the mineral, oil and gas rights thereunder. ——————— And, WHEREAS, *?* the parties of the first part are desio*r*us of selling to the said parties of the second part one-half of their royalties a*fr*said, which would be a one-sixteenth part of all oil and gas produced and saved from the *lea ed* premises aforesaid, and are also desio*r*us of selling to the parties of the second part a one-sixteenth interest in all the oil *an* gas produced from the lands above described which have not been leased. NOW: THEREFORE: the par*tis* of the first part, Tom Hanson and his *wi e*, Dollie Hanson, for and in consideration of the sum of One Hundred ($100) Dollars, to them paid, in cash, the receipt whereof is hereby acknowledged, do hereby grant, demise, lease and let unto the parties of the second part, and unto their heirs and assigns a one-sixteenth part of all the oil and gas produced and saved by the said W. D. Wingfi*l*ed their successors, or assigns, or any one *le*se who may operate for oil and gas from any of the premises aforesaid including that hereinbefore described as leased as well as the lands hereinbe*ofr*e described as not having been leased that is [192 acres again described]. All covenants and agreements herein set forth between the parties hereto shall exte*dn* to their successors, heirs, executors, administrators, and assigns. WITNESS our hands on this the 27 day of November. 1919. A*?* D*?*"

Next appear the Hansons' signatures and their acknowledgment, the latter referring to the Hansons as "the granotrs in the foregoing deed."

Although this instrument—entitled a contract but in reality a deed—is clumsily worded, there can be little doubt about the parties' intention. Of primary importance is the granting clause, which transfers a one-sixteenth part of all oil and gas produced and saved by Wingfield "or any one *le*se [else] who may operate for oil and gas" from either the leased or unleased premises. The parties could hardly have referred more explicitly not only to Wingfield but also to any other person who might produce oil and gas from the property. The appellant insists that the misspelling which appears as "lese" was not necessarily intended for "else," but we do not consider the point either of decisive importance or open to much doubt. If we entirely eliminate the word the meaning of the sentence is not materially affected. And it is **pretty certain that the parties meant "else."** Not only is that word more suited to the context than any other, but the presence of thirteen other instances in which the typist transposed two adjacent letters indicates that the same mistake occurred in the writing of "else."

It is equally clear that the parties to the deed had in mind an interest in the royalties rather than the title to the minerals themselves. In addition to **referring** specifically to royalties the instrument repeatedly **mentions** "oil and gas produced and saved" from the land, which is not synonymous with those minerals in their **natural** state. We conclude that the Hansons meant to convey a perpetual royalty in the oil and gas.

The appellant's alternative contention is that this attempt violated the rule against perpetuities, by which a future interest is required to vest within a period measured by a life or lives in being, plus twenty-one years. It is argued that the appellees could acquire no vested interest in the oil and gas until production was obtained under a lease executed by Tom Hanson or his successors in title—an event not certain to occur within the time

allowed by the rule. The appellees answer that since the royalty interest vested at once it is immaterial that its enjoyment was indefinitely postponed. This alone is hardly a sufficient answer to the contention, for it begs the question by assuming that the appellees' interest was present or vested, rather than future and contingent, which is really the issue to be decided.

The suggestion that the rule against perpetuities forbids the creation of a perpetual nonparticipating royalty interest is far-reaching in its implications. We know from scores of reported cases that this device has been widely adopted in the oil-producing states. Countless past transactions would be abrogated by a declaration that the power to lease cannot be permanently separated from the ownership of future royalties.

It is odd that the oil industry progressed for many decades without the present question having been fully explored. When the permanent edition of Professor Summers' treatise on oil and gas law was published in 1938 it was written that in no case had the issue been squarely decided. § 605. Since then the courts in two states have considered the question, but, owing to differences in the facts and in the local law, their decisions are not especially pertinent to the case at bar.

In Kansas the problem was mentioned in *Miller* v. *Sooy*, 120 Kan. 81, 242 P. 140, and was later decided in *Lathrop* v. *Eyestone*, 170 Kan. 419, 227 P. 2d 136. In the latter case the owner of minerals had attempted to convey undivided interests in royalties under future leases, but the grantor reserved to himself the exclusive power to lease. In holding these conveyances contrary to the rule against perpetuities the court pointed out that in Kansas a right to royalty alone confers no interest in the land itself and is regarded as personal property. The court seems to have reasoned that this personal property right could not vest until the oil and gas were severed from the soil—an event that might be postponed too long.

In California the question arose in *Dallapi* v. *Campbell*, 45 Calif. App. 2d 541, 114 P. 2d 646. There the cor-

porate proprietor of a residential development reserved to itself no interest in the various lots conveyed, but it did attempt to retain the naked power to execute oil and gas leases. The court said that had the grantor reserved any estate in the land there would have been no violation of the rule against perpetuities, which deals with future interests only. But since the corporation had kept only the bare power to lease, the court tested the case by the law applicable to powers of appointment. It was held that the grantor did not have the authority to make a lease to itself; so the power was special, not general, and a contravention of the rule against perpetuities. See Rest., Property, § 373, Comment c.

In the light of our own prior decisions we do not find the Kansas and California decisions persuasive. Unlike the situation in Kansas, it is settled in Arkansas that "royalties in oil and gas, until brought to the surface and reduced to possession, are interests in real estate and not personal property." *Arrington* v. *United Royalty Co.*, 188 Ark. 270, 65 S. W. 2d 36, 90 A. L. R. 765; see also *Clampitt* v. *Ponder*, D. C. Ark., 91 F. Supp. 535, noted in 5 Ark. L. Rev. 458. As pointed out in the note just cited, some jurisdictions hold that a conveyance of royalty transfers title to the minerals in place; but this is not the law in Arkansas. We have recently observed that one who retained only a royalty interest "reserved no minerals or mineral rights." *Davis* v. *Collins*, 219 Ark. 948, 245 S. W. 2d 571.

Thus in Arkansas the owner of royalty has an estate in the land, but his ownership does not include the fee simple title to the minerals themselves. In the case at bar the question is whether the law permitted Tom Hanson to retain the leasing power while conveying to the appellees a one-sixteenth royalty in the oil and gas. It has been demonstrated in some detail that the policy underlying the rule against perpetuities presents no obstacle to the creation of a nonparticipating royalty, for the device actually tends to promote rather than to inhibit the leasing of the minerals. Meyers, The Effect of

the Rule Against Perpetuities on Perpetual Non-Participating Royalty and Kindred Interests, 32 Tex. L. Rev. 369.

We are decidedly of the opinion that the rule against perpetuities was not violated by the conveyance to these appellees, for the reason that they acquired a present interest rather than a future interest in the land. To treat the appellees' royalty as a future interest involves a failure to distinguish between their estate in real property, which is an abstract legal conception, and the likelihood of their ultimately receiving a share in the production of oil and gas, which is purely a practical matter.

It is plain that, under our law, the appellees acquired an estate in the land at the moment they received the deed in question. That estate was one of absolute ownership, although limited in extent, just as the perpetual right to hunt upon another's land has been referred to as "the fee simple privilege of hunting." *Council* v. *Sanderlin,* 183 N. C. 253, 111 S. E. 365, 32 A. L. R. 1527. The appellees' estate was doubtless speculative in value, but the uncertainty stemmed from a fundamentally different reason from that which makes an ordinary contingent remainder an estate of doubtful worth. In the latter case the physical property is known to exist; the uncertainty is whether the contingent remainderman or some third person will eventually acquire the absolute ownership. Here, however, no third person is involved. The appellees' title being complete, the doubt is occasioned not by the possibility that someone else may acquire the property but by the possibility that there may in fact be no oil and gas within the land. In short, the typical contingent remainderman has an uncertain interest in the fee simple, while these appellees have a fee simple interest in the uncertain.

A contingent future interest is one which may eventually become vested, but here the difficulty lies in the attempt to find a satisfactory date upon which the appellees' estate, if regarded as future and contingent, might be said to vest. The appellant suggests that the estate would vest upon the execution of an oil and gas lease, but this position is not theoretically sound. Suppose, for

example, that a lease were executed and expired by its terms without production; would the estate then again become contingent, awaiting a second vesting upon the making of another lease? A vested estate is by definition vested for all time; the concept itself precludes the possibility of a further contingency.

It might also be argued that the estate would vest upon the actual production of oil and gas—the view to which the Kansas court was driven by reason of the royalty interest being considered as personal property. But in Arkansas the royalty interest is real property, and the severed oil or gas is personalty; there is no need to confuse the two. A particular producing well might be abandoned at any time, and even if operated to exhaustion it would drain only the oil-bearing stratum that it had penetrated, leaving untouched other deposits that might lie above or below. It is hard for us to conceive of an estate in real property which vests barrel by barrel or stratum by stratum. In the analogous case of a *profit a prendre,* such as the perpetual right to take game or fish from another's land, the estate in real property is a present vested interest which is unaffected by the rule against perpetuities. Gray, The Rule Against Perpetuities (4th Ed.), § 279. Although the owner of such a privilege acquires a personal property interest whenever he bags a duck or lands a fish, this action is merely an incident in the enjoyment of the estate in real property.

It is true that the owner of a nonparticipating royalty may not reap the full fruits of his investment until the person having the power to lease has taken that step (or, perhaps, in a situation involving fraud or arbitrary action, has been compelled to do so by a court of equity. See Jones, Non-Participating Royalty, 26 Tex. L. Rev. 569). But we think this want of leasing power on the part of the royalty owner goes not to the character of his estate but to its extent. The fee simple title has often been likened to a fagot which may be parceled out in any manner permitted by the common law or by statute. Here the appellees did not acquire that particular stick which constitutes the leasing power, but the lesser estate

which they did obtain is nevertheless a present vested estate in the land. The rule against perpetuities is therefore inapplicable.

Affirmed.