330 So.2d 76 (1976)
F. M. "Bubba" FISHER et al., Appellants,
v.
SUN OIL COMPANY et al., Appellees.
Nos. X-422, X-467 to X-471.
District Court of Appeal of Florida, First District.
March 30, 1976.
Rehearing Denied April 27, 1976.
*77 Robert L. Shevin, Atty. Gen., Joseph C. Mellichamp, III, and Larry Levy, Asst. Attys. Gen., and Gerald L. Brown, of Wells, Brown, Caton & Brady, P.A., Pensacola, for appellants.
Peter J. Winders, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, W. Spencer Mitchem, of Beggs, Lane, Daniel, Gaines & Davis, Pensacola, and A.L. Johnson and T. Sol Johnson, of Johnson, Johnson & Green, Milton, for appellees.
McCORD, Acting Chief Judge.
This is an appeal from a final summary judgment in an action brought by appellees against appellants seeking declaratory, injunctive and other relief as to appellees' liability for 1973 ad valorem taxes on certain oil, gas and mineral leasehold interests which each appellee held covering certain land in Santa Rosa County. The leases in question were the type known as "Producer's 88" leases, a standard form of lease used in the oil and gas industry. Each lease, as to the land covered by it, grants generally to the lessee the right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulfur and all other minerals. Each contains additional provisions which grant an easement for exploration and production of minerals and further provides for termination of the lease.
Appellants contend that the Legislature, by § 193.481(1), Florida Statutes, directed that such a lease be treated as an interest in real property and subject to ad valorem taxation by the county in which the land lies. § 193.481(1) provides as follows:
"Whenever the mineral, oil, gas, and other subsurface rights in or to real property in this state shall have been sold or otherwise transferred by the owner of such real property, or retained or acquired through reservation or otherwise, such subsurface rights shall be taken and treated as an interest in real property subject to taxation separate and apart from the fee or ownership of the fee or other interest in the fee. Such mineral, oil, gas and other subsurface rights, when separated from the fee or other interest in the fee, shall be subject to separate taxation. Such taxation shall be against such subsurface interest and not against the owner or owners thereof or against separate interests or rights in or to such subsurface rights."
The trial court, citing Miller v. Carr, 137 Fla. 114, 188 So. 103 (1939), and Fla., 193 So. 45 (1940), concluded that the leases "are licenses to explore and produce oil, gas and minerals and do not constitute interests or possessory interests in real property." He found that the leases were essentially the same as those in issue in Miller v. Carr "in which the Supreme Court held that such an instrument did not constitute a conveyance of the oil in place, but merely granted the right to produce oil from the land." The trial judge went on to say:
"The plaintiffs' forms of lease constitute the grant of an incorporeal hereditament which passes only the right to produce oil, gas and minerals, without severance, either actual or constructive of the title to the minerals in place and without passing any title until the subject matter is removed from the earth. See Coastal Petroleum Company v. Secretary of the Army of the United States of America, U.S.Dist.Ct. So.Dist. Co. of Fla., Case No. 68-951-Civ.Ca. and 69-699-Civ.Ca. (unreported).

*78 The defendants contend that when in the course of a 1963 amendment to the predecessor of Section 193.481, the words `not to include a leasehold interest in said subsurface rights' were deleted from the statute, this evidenced a legislative intent to subject oil, gas and mineral leases to separate taxation. The court is not persuaded that such a legislative intent was indicated, particularly in light of the entire amendment and the rules of strict construction against taxing statutes. The case of Miller v. Carr, supra, had been decided many years before, and had the legislature intended to tax oil, gas and mineral leases as property interests separate from the fee, it would have been a simple matter to have enacted the appropriate statutory language to do so. The court is of the view that the judiciary should not construe statutes in such a manner as to impose taxation without a clear legislative mandate."
It is our view that the trial court was correct.
It should initially be pointed out that Article VII, Section 1, of the Florida Constitution provides:
"(a) No tax shall be levied except in pursuance of law. No state ad valorem taxes shall be levied upon real estate or tangible personal property. All other forms of taxation shall be preempted to the state except as provided by general law." (emphasis supplied)
Under the foregoing provision of the Constitution, the counties may levy ad valorem taxes upon real estate and tangible personal property in the county but all other forms of taxation are preempted to the state unless by general law the county is given authority to levy such other taxes. Oil under the ground before severance is real property owned by the owner of the mineral fee and not by one holding a mineral lease. Miller v. Carr, supra.
In Miller v. Carr the Supreme Court had before it a suit against the executor of a Will for enforcement of an alleged oral contract by the decedent to devise an interest in royalties from an oil lease upon his property in Pennsylvania. The Supreme Court in its opinion said:
"... The lessee had under the terms of the lease the right and privilege only of taking the oil from the land and none other... . The weight of authority appears to be that royalties under an oil or gas lease, when the oil is severed from the land, is personal property... .
It is not alleged in either of the first two counts that the decedent had by a proper instrument in writing severed his ownership of the land and of the oil therein, if that can be done; and as at the death of the decedent, oil that had not then in fact been severed from the lands was a part of the realty, and descended to his heirs, and could not pass by oral contract to devise;"
When the case appeared before the Supreme Court a second time upon an amended complaint, the court held:
"As we construe the lease, it was a contract for the use of the realty for the purposes therein specified. It passed the right to produce oil from the land and nothing more."
It is, thus, apparent under the law as established in Miller that these leases are only a right to search for and to sever oil from real property, if found. They are not an interest or estate in real property. Nor are they personal property. See Park-N-Shop Inc. v. Sparkman, Fla., 99 So.2d 571 (1957). Thus, they are not subject to ad valorem taxation unless the Legislature by the aforesaid statute has clearly made them so.
Land is not only divisible horizontally, but is also divisible vertically. Dickinson *79 v. Davis, Fla., 224 So.2d 262 (1969). The fee may be split into a surface estate and a mineral estate by conveyance or by a reservation of the mineral fee in the conveyance of a surface fee (or vice versa) so that the result is a fee in the surface estate and a separate fee in the mineral estate. An oil, gas and mineral lease, however, is not a conveyance of the mineral fee and is not an interest in or to real property under the pronouncements of Carr, supra. The owner of an unsplit fee can, of course, execute a mineral lease just as he can execute a lease of the surface, but this does not divest him of the mineral fee any more than a lease of the surface divests him of the surface fee. Likewise, the owner of the mineral fee who does not own the surface fee can execute a mineral lease and this likewise does not divest him of the mineral fee. Had the Legislature in the statute used the term "leasehold interest in subsurface rights," we would have an unambiguous statute. By using the term "subsurface rights," however, we have an ambiguity. Perhaps the Legislature intended it to include a leasehold interest, but from the terminology used, such is far from clear. As pointed out by the court below, § 193.221, Florida Statutes, 1961, (predecessor to § 193.481) specifically excluded leasehold interests in subsurface rights from imposition of the tax. It said:
"Whenever the mineral, oil or other subsurface rights in real property, not to include a leasehold interest in said subsurface rights ..." (emphasis supplied)
Appellant argues that by amending "not to include a leasehold interest in said subsurface rights" out of the statute the Legislature intended that a leasehold interest in subsurface rights was to be taxed. That argument, however, loses its force when we note that with the dropping of the phrase regarding leasehold rights, the Legislature in the same act, Chapter 63-355, Florida Statutes, added the last sentence of the section:

"Such taxation shall be against such subsurface interest and not against the owner or owners thereof or against separate interests or rights in or to such subsurface rights." (emphasis supplied)
Appellant contends that this sentence was simply put in to show that the tax is one in rem rather than against the person. It appears to us, however, upon considering the statute as a whole, and particularly the last phrase underlined above, that the reference throughout the statute to subsurface rights was intended to refer to the mineral fee estate, as such estate would be subject to separate interests or rights  namely mineral leases, royalties, etc. From the terminology used, it appears logical that the Legislature intended that taxation of mineral fee estates be in accordance with general standards governing taxation of surface or unsevered estates in real property by directing that the tax be in rem against each estate in the property as a whole, and not against lesser dependent rights carved out of the whole.
To add to the confusion, the Supreme Court used the terms "mineral rights" when we believe it meant "mineral fee" or "mineral estate" in its opinion in Cassaday v. Consolidated Naval Stores Company, Fla., 119 So.2d 35 (1960) [which held original § 193.221, Florida Statutes (Chapter 57-150, Acts of 1957) unconstitutional on grounds not pertinent here] and in its opinion in Dickinson v. Davis, Fla., 224 So.2d 262 (1969) [which held re-enacted § 193.221, Florida Statutes (Chapter 63-355) constitutional]. Our conclusion is based upon the fact that only the mineral fee was involved in the two foregoing cases; and we, therefore, do not believe the Supreme Court by its use of such term intended to there rule that mineral leases were interests in or to real property (the fee) and thereby subject to ad valorem taxation under the statute without clear and specific legislation authorizing same. That question was not before the court. The term "mineral rights" is often used in *80 reference to the "mineral estate" or "mineral fee" and, for example, the terms were interchangeably used by this court in P & N Investment Corp. v. Florida Ranchettes, Inc., Fla.App. (1st), 220 So.2d 451 (1969), and Kirk v. Smith, Fla.App. (1st), 253 So.2d 492 (1971). This becomes even more definite when we consider in para materia certain sections of Chapter 211, Florida Statutes.
§ 211.02, Florida Statutes, levies an excise tax upon the severing of oil or gas from the ground. Thus, the lessee of an oil, gas and minerals lease must pay this severance tax to the state as he removes the oil from the ground. Under this statute, 80% of the tax goes to the state for the use of the general revenue fund and the remaining 20% goes to the county in which the oil and gas is produced "for the use of the general revenue fund of the board of county commissioners." The statute states that it is the intention of the Legislature that the county's portion is "to compensate the county in which oil and gas is produced for the loss of ad valorem taxes by reason of the provision of this chapter, and to make it possible for the board of county commissioners of such county to provide the additional public services that will be required in a county where oil and gas are produced." In addition, 211.13 provides:
"... The several [property appraisers] of this state and of the cities therein, when assessing the value of any land for ad valorem taxes, shall not increase the value thereof by reason of the fact that there may be oil and gas under the surface of such land, inasmuch as it is impossible under known valuation methods to accurately ascertain the true value of oil and gas in place and taxation thereof is more certainly accomplished after its capture or severance from the earth or water ..."
In view of the foregoing and the ambiguities which we have alluded to in § 193.481, Florida Statutes, we at least have strong doubts that the Legislature specifically intended that oil, gas, and mineral leases be subject to ad valorem taxation. Appellant tax assessor evidently also had such doubts when the Legislature amended § 193.481(1), Florida Statutes in 1963 as the assessment here challenged was not made until 1973. If real estate or tangible personal property leases are to be made subject to ad valorem taxation, the authority therefor must be clear and not merely inferred. It is a cardinal rule that a statute imposing taxes must be clear and specific and will be liberally construed in favor of the taxpayer, State ex rel. Riverside Bank v. Green, Fla., 101 So.2d 805 (1958); Overstreet v. Ty-Tan, Inc., Fla., 48 So.2d 158 (1950).
We have considered the opinion of the District Court of Appeal, Second District, in Straughn v. Amoco Production Company, Fla.App.2d, 309 So.2d 39 (1975), and respectfully disagree therewith.
Pursuant to the provisions of Article V, Section 3(b)(3), Constitution of Florida, 1968 Revision, and the decision of the Florida Supreme Court in Zirin v. Charles Pfizer & Co., 128 So.2d 594 (Fla. 1961), this Court does hereby determine and certify the decision in the above cause to be one which passes upon a question of great public interest.
MILLS and SMITH, JJ., concur.