508 So.2d 401 (1987)
David E. TERRY, Mary E. Terry and George A. Terry, Jr., Appellants,
v.
CONWAY LAND, INC., Etc., et al., Appellees.
No. 86-514.
District Court of Appeal of Florida, Fifth District.
April 30, 1987.
Rehearing Denied June 16, 1987.
*402 Robert N. Reynolds and Arnold David Barr, of Robert N. Reynolds, P.A., Miami, for appellants.
Fletcher G. Rush, of Rush, Marshall, Bergstrom, Reber & Gabrielson, P.A., and John A. Reed, Jr., of Lowndes, Drosdick, Doster, Kantor & Reed, P.A., Orlando, for appellees.
ORFINGER, Judge.
This appeal is from a summary final judgment denying appellants' claim to an apportionment of an award entered in a condemnation suit in which the City of Orlando acquired the fee simple title to the property involved. The sole issue is whether appellants are entitled to an apportionment of the award based on a royalty interest reserved by their predecessors in title.
Appellees were the fee owners of the property at the time of the taking. Appellants are successors in interest to Magnolia Ranch, Inc., the former owners of the property involved. The deeds by which Magnolia Ranch, Inc. conveyed the property to appellees' predecessor in title, each contain the following provision:
SUBJECT HOWEVER, to the following:
1. Taxes and assessments of the County of Orange, Florida, for the year 1954.
2. That certain oil, mineral, and gas lease and agreement entered into between Magnolia Ranch, Inc., George Terry and Mary Elizabeth Terry, his wife, as parties of the first part, or lessors, and Warren Petroleum Corporation, which said lease and agreement is dated the *403 24th day of June, 1953, and recorded in Deed Book 951 at page 230-8, in the public records of Orange County, Florida, the rental with respect to which is on an annual basis of fifty cents (50c) per acre, which said oil, mineral and gas lease and agreement to the extent that it embraces the lands aforesaid is hereby assigned, transferred and set over unto party of the second part, the annual rental thereof with respect to which shall be prorated between Magnolia Ranch, Inc. and the party of the second part herein as of the date hereof, except however, parties of the first part do hereby specifically reserve for the account, use, and benefit of Magnolia Ranch, Inc., its successors and assigns forever, one-half of any and all royalties that may be paid or obtained from the lands aforesaid on account of any oil, mineral, minerals, or gas which may be taken from said real property herein conveyed, provided however, this reservation shall not apply to participation in delay rental which may be paid on account of existing or any future oil, mineral and gas leases and arrangements affecting said real property.
The construction and interpretation of Paragraph 2 is at issue here. The trial court agreed with appellees that the royalty reservation applied only to the then existing lease referred to in the quoted provision which had long since expired, and on that basis entered summary judgment for appellees.
Considering the clause in its entirety, it is clear that it does not purport to limit the royalty interest to the existing lease. If it did, there would be no purpose in the provision that "this reservation [of the royalty interest] shall not apply to participation in delay rental which may be paid on account of existing or any future oil, mineral and gas leases ..." If the reservation applied only to the existing lease, there would be no entitlement to any participation in proceeds of future leases, and no reason to refer to future leases. Since we cannot ignore or disregard this language, we conclude that the royalty interest, whatever it may be, was intended to apply to leases in futuro, as well as to the then existing lease.
But even if the trial court erred in construing the reservation to apply only to the then existing and now expired lease, we must sustain his order if it is correct for any reason. Zinger v. Gattis, 382 So.2d 379 (Fla. 5th DCA 1980). Appellees contend that the order can be sustained for any one of the following reasons:
a) if the reservation applies to leases in the future, it would apply only to leases which would be entered into by the immediate grantee of Magnolia Ranch, Inc., who has since conveyed the property;
b) the royalty interest is personal property, and thus was not encompassed at all in the condemnation proceeding, which involved only real property;
c) whether the royalty interest is considered to be real or personal property, if it is construed to apply to any lease not in existence now and which may be entered into in the indefinite future, then such provision would be entirely void as violative of the rule against perpetuities (now codified in section 689.22, Florida Statutes (1985).
There is nothing in the language of Paragraph 2 which in any way purports to limit future leases to those entered into by Magnolia's immediate grantee. The language "existing or future ... leases and arrangements affecting said real property." indicate a clear intention that the provision follow the land.
What type of interest, then, does the royalty reservation create? A grant of a royalty interest and a conveyance of minerals in place are recognized as two entirely different concepts and convey different interests. Neel v. Rudman, 160 Fla. 36, 33 So.2d 234 (1948). In Miller v. Carr, 137 Fla. 114, 188 So. 103 (1939) the court had to determine whether a complaint which alleged an oral agreement to bequeath the decedent's oil royalty interest stated a cause of action. The court indicated that
The next question for decision is whether or not the interest in the royalties is personal property or an interest in *404 land. If the interest in the royalties is personal property, then counts 1 and 2 each state a cause of action. If the interest in the royalties is an interest in land, and controlled by an oral agreement to leave same to Pearl Miller, then counts 1 and 2 of the declaration fail to state a cause of action.
Id. 188 So. at 106. After reviewing the appropriate authorities the court concluded that royalties on oil which had been severed from the ground were personal property, but royalties on oil still in the ground constituted a part of the realty and could not pass by an oral contract to devise. Florida has thus adopted the view that a royalty interest in unsevered oil is an interest in real property.[1]
Where the grant or reservation of a royalty interest applies, (here to future leases not yet made although presently existing leases may be involved as well) and is not otherwise limited as to time, the interest is referred to as a perpetual non-participating royalty. Stokes v. Tutvet, 134 Mont. 250, 328 P.2d 1096 (1958). Commenting further, the Montana Supreme Court said:
"Non-participating royalty has a well-understood meaning in the oil industry. It may be defined as an interest in the gross production of oil, gas and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of, the bonus payable for, or the delay rentals to accrue under, oil, gas and mineral leases executed by the owner of the mineral fee estate. The exclusive-leasing privilege remaining in the mineral fee owner is commonly referred to and known as the `executive right'". Jones, Non-Participating Royalty, 26 Texas L.Rev. 569. See also 3A Summers' Oil and Gas, § 599 at p. 276.
Id. 328 P.2d at 1101. See also Lackey v. Corley, 295 So.2d 762 (Miss. 1974).
The overwhelming majority of the courts in this country which have been faced with this problem have held that a perpetual non-participating royalty interest in unsevered oil is real property and an interest in land.[2] In our view, the better reasoned authority supports the position that the grant or reservation of a perpetual nonparticipating royalty interest creates a presently vested interest in realty, and as such does not violate the rule against perpetuities. In dismissing the contention that the royalty interest would not vest until some future time when the oil was severed from the ground, the Arkansas Supreme Court said:
We are decidedly of the opinion that the rule against perpetuities was not violated by the conveyance to these appellees, for the reason that they acquired a present interest rather than a future interest in the land. To treat the appellees' royalty as a future interest involves a failure to distinguish between their estate in real property, which is an abstract legal conception, and the likelihood of their ultimately receiving a share in the production of oil and gas, which is purely a practical matter.
It is plain that, under our law, the appellees acquired an estate in the land at the moment they received the deed in question. That estate was one of absolute *405 ownership, although limited in extent, just as the perpetual right to hunt upon another's land has been referred to as "the fee-simple privilege of hunting". Council v. Sanderlin, 183 N.C. 253, 111 SE 365, 368, 32 ALR 1527. The appellees' estate was doubtless speculative in value, but the uncertainty stemmed from a fundamentally different reason from that which makes an ordinary contingent remainder an estate of doubtful worth. In the latter case the physical property is known to exist; the uncertainty is whether the contingent remainderman or some third person will eventually acquire the absolute ownership. Here, however, no third person is involved. The appellees' title being complete, the doubt is occasioned not by the possibility that some one else may acquire the property but by the possibility that there may in fact be no oil and gas within the land. In short, the typical contingent remainderman has an uncertain interest in the fee simple, while these appellees have a fee simple interest in the uncertain.
Hanson v. Ware, 224 Ark. 430, 274 S.W.2d 359, at 362, 46 A.L.R.2d 1262 at 1267 (1955).
Florida recognizes the concept that the rule against perpetuities is directed to remote contingent estates, and is not concerned with estates which vest within the rule, even if the time is remote when the estate comes into possession. Story v. First National Bank & Trust Company In Orlando, 115 Fla. 436, 156 So. 101 (1934). Sub judice, the estate became vested when the reservation was created, and the rule is thus not violated despite the fact that possession or enjoyment of the estate is postponed to some future date.
The appellees urge us to follow the Kansas rule that a royalty interest is personal property which does not vest until the oil is severed from the ground, so that an attempt to create a perpetual nonparticipating interest violates the rule against perpetuities. See e.g., Cosgrove v. Young, 230 Kan. 705, 642 P.2d 75 (1982). We cannot accept that position for several reasons. First, the Florida case of Miller v. Carr, supra forecloses it. Next, the Kansas rule, which is distinctly a minority view in the country, has been severely criticized by members of the Kansas Supreme Court. In Cosgrove, Justice Herd, while dissenting, said:
The inconsistency of the Lathrop [v. Eyestone, 170 Kan. 419, 227 P.2d 136 (1951)] rule with the treatment afforded similar interests is noted in 2 Williams & Meyers, Oil & Gas Law § 324.4, pp. 59-60.
"The grant or reservation of a perpetual non-participating royalty creates a right-duty with respect to oil or gas produced at any time from the land, whether by a lessee or by the executive. That production is uncertain and may never occur should not defeat the interest. The royalty created by a long-term oil and gas lease has never been thought to offend the Rule against Perpetuities, though subject to precisely the same contingency; namely, the discovery and production of oil or gas. The reservation as rent of a share of crops in a long-term lease for years has never been held to violate the Rule, although the growing and harvesting of the crops is subject to uncertainty.... To hold perpetual royalty to be too remote is to confuse the value of the right with the right itself. From the time the executive delivers or accepts the deed, he is bound to account to the nonexecutive for a fraction of the oil; the duty may not be onerous for there may never be any oil; but the lack of production does not remove the duty."
Cosgrove, 642 P.2d at 89 (Herd, J., dissenting).
Summarizing, we hold that 1) the reservation in question was not limited to the then existing lease which had since expired, but applied to future leases as well, and reserved a perpetual nonparticipating royalty interest in oil, mineral or gas leases; 2) that the interest was a presently vested interest in real property as it applied to unsevered oil, gas or minerals; and 3) because it created a presently vested interest, the rule against perpetuities was not violated. *406 We can therefore find no ground upon which the summary final judgment for appellees can be supported. The appellants are entitled to a determination of the value of their royalty interest.
Appellants have moved for an allowance of appellate attorney's fees against the City of Orlando, the condemnor, citing Orange State Oil Company v. Jacksonville Expressway Authority, 143 So.2d 892 (Fla. 1st DCA 1962) as authority. In Orange State, the court held that the condemnor was obligated for the costs and attorney's fees of the condemnees in the supplemental apportionment litigation, because the necessity to adjudicate the conflicting claims to the compensation award arose as a direct result of the condemnation proceeding. However, the court also said:
The same result might not be justified as a matter of equity if the sole purpose of the supplemental proceeding is to determine the rights of conflicting claimants upon issues that do not arise as a direct result of the condemnation proceedings and which, unless settled by agreement between such claimants, would have required independent litigation for its determination even had condemnation proceedings not been instituted.
143 So.2d at 896.
This dispute arises now because the fee title has been taken by condemnation, but the conflicting claims do not arise as a direct result of the condemnation proceedings. The appellants' claim raises a question as to appellees' title which would have required independent litigation for its determination even if the condemnation proceedings had never occurred. The condemning authority should not be obligated to pay attorney's fees to settle the dispute which would have inevitably arisen.
The judgment is reversed and the cause is remanded for further proceedings.
REVERSED and REMANDED.
COBB, J., concurs.
HARRIS, C.M., Associate Judge, dissents with opinion.
HARRIS, C.M., Associate Judge, dissenting.
I respectfully dissent.
While I agree that the trial court erred in holding that royalty reservation applied only to the then existing lease, I believe that the reservation as it applied to future leases was a personal property interest barred by the rule against perpetuities.
The applicable language in the reservation provided:
... except however, parties of the first part do hereby specifically reserve for the account, use, and benefit of Magnolia Ranch, Inc., its successors and assigns for ever, one-half of any and all royalties that may be paid or obtained from the lands aforesaid on account of any oil, mineral, minerals, or gas which may be taken from said real property herein conveyed ... (Emphasis added.)
Clearly this language does not vest title in the oil, gas or minerals as they exist in the real estate. It merely reserves the right to receive payment from the sale of said oil, gas and minerals once they are "taken from the said real property."
The majority cite Miller v. Carr, 137 Fla. 114, 188 So. 103 (1939) as adopting the view that a royalty interest in unsevered oil is an interest in real property. That is so. But Miller also adopts the view that an interest such as we have in the case at bar is not an interest in unsevered oil, gas and minerals and is, therefore, personal property.
Notice the similarity in the provisions creating the royalty right in Miller and in the case at bar. In Miller the following provision was held to be personalty:
... one eighth (1/8) of all the oil produced by any and all well or wells drilled on said land, said oil to be delivered to the credit of said parties of the first part, their heirs and assigns in marketable condition, to such accessible pipe line company as shall be designated and approved by said parties of the first part ...
The Miller court said of this provision:

*407 ... The instrument contemplates the removal of the oil from the ground and placing it in a reservoir to be connected with pipe lines, and that a one-eighth interest thereof is to be the property of Alonzo A. Carr as rents or royalties.
The Miller court then permitted an amendment to the pleadings to seek an interest in this personal property.
Suppose the owner of the fee in the case at bar had sold the oil, gas and mineral rights in place to a third person. Would appellant be entitled to any of the proceeds from said sale? Not under the terms of the reservation. No payment would be due until the oil or gas was removed from the land and sold.
It is submitted that under the Miller decision this constitutes personal property.
The majority's reliance on the Arkansas case of Hanson v. Ware, 224 Ark. 430, 274 S.W.2d 359, 46 A.L.R.2d 1262 (1955) is misplaced because of the law peculiar to Arkansas. As stated by the Hanson court:
It is plain that, under our law, the Appellees acquired an estate in the land at the moment they received the deed in question. (Emphasis added.)
As indicated earlier I believe this is in direct conflict with our Supreme Court's ruling in Miller that such an interest in severed oil is personalty.
NOTES
[1] See Straughn v. Sun Oil Company, 345 So.2d 1062 (Fla. 1977) where the court approved the taxation as real property of leasehold interests in which oil companies are given the right to drill for and extract oil, reserving to the fee owner a fraction in value or kind of the oil, gas or minerals so produced. See also, Welles v. Berry, 434 So.2d 982 (Fla. 2d DCA 1983) where the court recognized a reservation similar to the one sub judice as creating a nonparticipating royalty interest, and implied a covenant requiring the holder of the executive right to exploit the land for gas and oil.
[2] Some courts treat this interest as an incorporeal hereditament. See Mark v. Bradford, 315 Mich. 50, 23 N.W.2d 201 (1946). Others merely assert the conclusion that "a perpetual nonparticipating Oil and Gas Royalty is an interest in realty." Yttredahl v. Federal Farm Mortgage Corporation, 104 N.W.2d 705 (N.D. 1960); Hanson v. Ware, 224 Ark. 430, 274 S.W.2d 359, 46 A.L.R.2d 1262 (1955). See also Anno: 4 A.L.R.2d 492. Still others hold this to be a corporeal interest and thus an interest in the mineral estate itself. See J.M. Huber Corp. v. Square Enterprises, Inc., 645 S.W.2d 410 (Tenn. 1982) and cases cited therein.