542 So.2d 362 (1989)
CONWAY LAND, INC., Etc., et al., Petitioners,
v.
David E. TERRY, et al., Respondents.
No. 70845.
Supreme Court of Florida.
March 30, 1989.
*363 Fletcher G. Rush of Rush, Marshall, Bergstrom, Reber, Gabrielson & Jones, P.A., Orlando, and John A. Reed, Jr. of Lowdes, Drosdick, Doster, Kantor & Read, Professional Ass'n, Orlando, for petitioners.
Robert N. Reynolds of Robert N. Reynolds, P.A., Miami, and Richard W. Lassiter, Clifford D. Edelston and Leon H. Handley of Gurney & Handley, P.A., Orlando, for respondents.
GRIMES, Justice.
We review Terry v. Conway Land, Inc., 508 So.2d 401 (Fla. 5th DCA 1987), because of apparent conflict with Miller v. Carr, is predicated on article V, section 3(b)(3), of the Florida Constitution.
This dispute arose out of a condemnation proceeding instituted by the City of Orlando. The petitioners derived their title to the land through two deeds executed in 1954 to Weewahotee Ranch, Inc., a predecessor in title. Both deeds contained an identical reservation of rights to Magnolia Ranch, Inc. The respondents are successors in interest to Magnolia Ranch, Inc. The issue in this case is whether respondents are entitled to participate in the condemnation award by reason of the reservations contained in the deeds.
The language of the reservations under which respondents claim an interest in the land reads as follows:
SUBJECT HOWEVER, to the following:
... .
2. That certain oil, mineral, and gas lease and agreement entered into between Magnolia Ranch, Inc., George Terry and Mary Elizabeth Terry, his wife, as parties of the first part, or lessors, and Warren Petroleum Corporation, which said lease and agreement is dated the 24th day of June, 1953, and recorded in Deed Book 951 at page 230-8, in the public records of Orange County, Florida, the rental with respect to which is on an annual basis of fifty cents (50¢) per acre, which said oil, mineral and gas lease and agreement to the extent that it embraces the lands aforesaid is hereby assigned, transferred and set over unto party of the second part, the annual rental thereof with respect to which shall be prorated between Magnolia Ranch, Inc., and the party of the second part herein as of the date hereof, except however, party of the first part does hereby specifically reserve for the account, use and benefit of Magnolia Ranch, Inc., its successors and assigns forever, one-half of any and all royalties that may be paid or obtained from the lands aforesaid on account of any oil, mineral, minerals, or gas which may be taken from said real property herein conveyed, provided however, this reservation shall not apply to participation in delay rental which may be paid on account of existing or any future oil, mineral and gas leases and arrangements affecting said real property.
The trial court entered summary judgment against the respondents on the premise that the reservation applied only to the Warren Petroleum Corporation lease identified in the deed, which had long since expired. The district court reversed saying:
[W]e hold that 1) the reservation in question was not limited to the then existing lease which had since expired, but applied to future leases as well, and reserved a perpetual nonparticipating royalty interest in oil, mineral or gas leases; 2) that the interest was a presently vested interest in real property as it applied to unsevered oil, gas or minerals; and 3) because it created a presently vested interest, *364 the rule against perpetuities was not violated.
508 So.2d at 405-06. The case was remanded for a determination of the value of respondents' royalty interest.
We fully agree with the rationale of the district court of appeal. While the first portion of paragraph 2 refers only to the Warren Petroleum Corporation lease, the language which follows, "except however," contains an express reservation of a royalty interest "for the benefit of Magnolia Ranch, Inc., its successors and assigns forever." These are words used in creating an interest in fee simple. See Reid v. Barry, 93 Fla. 849, 860-61, 112 So. 846, 851 (1927). The caveat which follows speaks of "existing or any future oil, mineral and gas leases" on the property. This language flies in the face of the contention that the reservation was limited to the existing lease.
When viewed in light of prevailing oil and gas law, paragraph 2 expresses a clear intent to preserve a perpetual nonparticipating royalty interest. It is not an interest in the minerals in place. Neel v. Rudman, 160 Fla. 36, 33 So.2d 234 (1948). It also differs from a landowner's royalty which is a special creature created by an oil and gas lease. As explained in Maxwell, The Mineral-Royalty Distinction  A Question of How Much, 10 Gonzaga Law Review 731, 735 (1975):
Unlike the landowner's royalty, the perpetual royalty is not the result of a reservation in an oil and gas lease. It is not ordinarily limited to the duration of any lease, although it can be so limited. It is frequently an interest in perpetuity; that is, an interest created to last for the duration of a fee simple.
In Welles v. Berry, 434 So.2d 982, 984-85 (Fla. 2d DCA 1983), the court said:
A nonparticipating royalty is defined as an interest in the gross production of oil, gas, and other minerals carved out of the mineral fee estate as a free royalty, which does not carry with it the right to participate in the execution of, the bonus payable for, or the delay rentals to accrue under oil, gas, or mineral leases executed by the owner of the mineral fee estate. Stokes v. Tutvet, 134 Mont. 250, 328 P.2d 1096 (1958); Picard v. Richards, 366 P.2d 119 (Wyo. 1961). The exclusive leasing privilege which remains in the mineral fee owner is commonly referred to as the executive right. Nonparticipating royalty interests may be created by a grant or reservation, either prior or subsequent to a lease of the land for oil and gas purposes. Jones, Non-Participating Royalty, 26 Tex.L.Rev. 569 (1948).
Consistent with the foregoing definition, paragraph 2 provides that the delay rentals, which are payable each year by the lessee under a typical oil and gas lease for the privilege of maintaining the lease, are surrendered to the owner of the executive right. The reservation pertains only to royalties for oil and gas removed from the land.
The petitioners argue that because the language refers to an interest in royalties which may be "paid or obtained" from the land, paragraph 2, at most, was intended only to reserve an interest in personal property which would not be encompassed in a condemnation of real estate. It was the petitioners' reliance upon Miller v. Carr, 137 Fla. 114, 188 So. 103 (1939), for this contention which originally persuaded this Court to accept jurisdiction of the case. Yet, upon close analysis, we are persuaded that Miller v. Carr actually supports the decision of the district court of appeal that the royalty interest created by paragraph 2 was real property. In Miller v. Carr, the Court passed on the sufficiency of a complaint alleging an oral agreement to bequeath the decedent's oil royalty interest. Because of the statute of frauds, it was necessary to decide whether the interest in the royalties was real or personal property. The Court held that royalties in oil which had already been severed from the ground at the time of owner's death were personalty. However, royalties in oil still in the ground were held to be part of the realty which descended to the heirs and not subject to an oral contract to devise. Thus, under paragraph 2, the royalty interest becomes *365 personal property only when the minerals are severed from the ground.
Finally, we address the contention that the reservation violates the rule against perpetuities. In Story v. First National Bank & Trust Co., 115 Fla. 436, 156 So. 101 (1934), this Court explained that the rule against perpetuities is concerned only with the vesting of estates or interests and is indifferent to their enjoyment. Further, the Court observed that the law favors an interpretation which provides for the early vesting of estates. The leading case on the vesting of oil royalty interests is Hanson v. Ware, 224 Ark. 430, 436, 274 S.W.2d 359, 362 (1955), which held:
We are decidedly of the opinion that the rule against perpetuities was not violated by the conveyance to these appellees, for the reason that they acquired a present interest rather than a future interest in the land. To treat the appellees' royalty as a future interest involves a failure to distinguish between their estate in real property, which is an abstract legal conception, and the likelihood of their ultimately receiving a share in the production of oil and gas, which is purely a practical matter.
It is plain that, under our law, the appellees acquired an estate in the land at the moment they received the deed in question. That estate was one of absolute ownership, although limited in extent, just as the perpetual right to hunt upon another's land has been referred to as "the fee simple privilege of hunting." Council v. Sanderlin, 183 N.C. 253, 111 S.E. 365, 32 A.L.R. 1527. The appellees' estate was doubtless speculative in value, but the uncertainty stemmed from a fundamentally different reason from that which makes an ordinary contingent remainder an estate of doubtful worth. In the latter case the physical property is known to exist; the uncertainty is whether the contingent remainderman or some third person will eventually acquire the absolute ownership. Here, however, no third person is involved. The appellees' title being complete, the doubt is occasioned not by the possibility that someone else may acquire the property but by the possibility that there may in fact be no oil and gas within the land. In short, the typical contingent remainderman has an uncertain interest in the fee simple, while these appellees have a fee simple interest in the uncertain.
Other courts have reached the same result. Price v. Atlantic Ref. Co., 79 N.M. 629, 447 P.2d 509 (1968); J.M. Huber Corp. v. Square Enters., Inc., 645 S.W.2d 410 (Tenn. Ct. App. 1982); McGinnis v. McGinnis, 391 P.2d 927 (Wyo. 1964). In the discussion notes at 4 Oil & Gas Rep. 325, 330 (1955), the Hanson decision is stated as being "both salutary and sound." At 2 H. Williams and C. Meyers, Oil and Gas Law § 323 (1985), the following comment appears:
It is submitted that the result and the reasoning in Hanson v. Ware is sound, as applied both to royalty and to non-executive mineral interests, and upon analytical and policy grounds. It should be accepted in all states... .
See also 1 E. Kuntz, A Treatise on the Law of Oil and Gas § 17.3 (1987).
Apparently, only the State of Kansas has squarely adopted the rule that a royalty interest is personal property which does not vest until the oil is severed from the ground so that an attempt to create a perpetual nonparticipating royalty interest violates the rule against perpetuities. Cosgrove v. Young, 230 Kan. 705, 642 P.2d 75 (1982). This view has been criticized by scholars in the field. 1 E. Kuntz, A Treatise on the Law of Oil and Gas §§ 15.4, 17.3 (1987); 3A W. Summers, The Law of Oil and Gas § 605 (1958); 2 H. Williams & C. Meyers, Oil and Gas Law § 323 (1985); Meyers, The Effect of the Rule Against Perpetuities on Perpetual Non-Participating Royalty and Kindred Interests, 32 Tex.L.Rev. 369, 375 (1954).
We hold that the reservation of the royalties set forth in paragraph 2 did not violate the rule against perpetuities because it created a presently vested interest in the land. The fact that production is uncertain and may never occur does not defeat the interest.
*366 Accordingly, we approve the opinion of the district court of appeal.
It is so ordered.
EHRLICH, C.J., and SHAW, BARKETT and KOGAN, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
McDONALD, Justice, concurring in part and dissenting in part.
I disagree that the Terrys retained any interest in the land in question. What was retained was "`one-half of any and all royalties that may be paid or obtained from the lands aforesaid on account of any oil, minerals, or gas which may be taken from said real property.'" Terry v. Conway Land, Inc., 508 So.2d 401, 403 (Fla. 5th DCA 1987) (quoting deed). As written, the reserved interest in royalty payments does not equate to a reservation of mineral rights.[*] The Terrys retained no rights of ownership of the real estate; they reserved no mineral rights, nor could they demand severance of minerals to generate royalties. Their interest was not a part of the value of the land but was limited to sharing in monies derived from severed minerals. Upon severance the minerals become personal property. Miller v. Carr, 137 Fla. 114, 188 So. 103 (1939). The Terrys possessed only a contingent interest in personal property.
I agree with the dissent in the opinion under review on the issue of the Terrys' interest in the property. I concur in the part of the district court opinion which disallows attorney's fees caused by the controversy between these parties against the condemning authority.
OVERTON, J., concurs.
NOTES
[*] I agree with the Oklahoma courts that, where there is no oil and gas lease upon property, the term "royalty" is construed in the broad sense of denoting mineral rights, but, where property is under lease for oil and gas, as is the case here, the term is construed in a restricted sense of denoting an interest in production. Doss Oil Royalty Co. v. Lahman, 302 P.2d 157, 162 (Okla. 1956).